THE NEW YORK & NEW ENGLAND RAILROAD COMPANY'S APPEAL FROM RAILROAD COMMISSIONERS.

Hartford Dist., March T., 1890. ANDREWS, C. J.. CARPENTER, TORRANCE, FENN and THAYER, Js.

The act of 1889 (Session Laws, ch. 220,) which provides for an order by the railroad commissioners for the change of a highway where crossed at grade by a railroad laid out since the highway was made, and authorizes the commissioners to apportion the expense of the alteration between the town and the railroad company, but limits the amount to be set to the town to one quarter of the expense, and requires that the

rest be paid by the railroad company, is not unconstitutional as conflicting with the provisions for " due course of law " in taking property, in the 14th amendment of the constitution of the United States, and in article 1, secs. 9 and 12 of the constitution of this state.

[Argued March 12th—decided April 22d, 1890.]

APPEAL from an order of the railroad commissioners; taken to the Superior Court in Windham County.

The town of Killingly made an application to the railroad commissioners under the act of 1889, (Session Laws of 1889, ch. 220,) for an alteration of a highway which was crossed at grade by the railroad of the appellants, and which was in existence when the railroad was laid out. The appellants were made parties defendant to the application. The commissioners heard the application and made an order for the alteration of the highway, and apportioned one fourth of the cost of the alteration to the town, and three fourths to the railroad company, the statute authorizing an apportionment of the cost between the town and the railroad company, but limiting the share to be set to the town to one fourth of the amount and requiring the railroad company to pay whatever should not be apportioned to the town. From this order the present appeal was taken to the Superior Court, the statute authorizing such appeal.*

---

* The first section of the act referred to, which is all that is important to the present case, is as follows :—

The selectmen of any town, the mayor and common council of any city, the warden and burgesses of any borough, within which a highway crosses or is crossed by a railroad, or the directors of any railroad company whose road crosses or is crossed by a highway, may bring their petition in writing to the railroad commissioners, therein alleging that public safety requires an alteration in such crossing, its approaches, the method of crossing, the location of the highway or crossing, the closing of a highway crossing and the substitution of another therefor not at grade, or the removal of obstructions to the sight at such crossing, and praying that the same may be ordered; whereupon the railroad commissioners shall appoint a time and place for hearing the petition, and shall give such notice thereof as they judge reasonable to the petitioner, the railroad company, the municipalities in which such crossing is situated, and the owners of the land adjoining such crossing and adjoining that part of the highway to be changed in grade; and after such notice and hearing said commissioners shall determine what alterations, changes or removals, if any, shall be made, and by

The case was heard before *Prentice, J.* The court affirmed the order of the railroad commissioners, and the original appellants appealed to this court.

*E. D. Robbins*, for the appellants.

This is the first case to arise under the act 1889. That act went into force on August 1st, and on that day the town of Killingly commenced this suit by its petition to the railroad commissioners. The whole statute does not come into consideration in the present suit, but only those provisions that apply where a town brings a petition for the separation of the grade of a railroad from that of a highway which was in existence when the railroad was constructed. It provides that the commissioners in the first instance, and the

whom done; and if the aforesaid petition is brought by the directors of any railroad company, or in behalf of any railroad company, they shall order the expense of such alterations or removals, including the damages to any person whose land is taken, and the special damages which the owner of any land adjoining the public highway shall sustain by reason of any change in the grade of such highway, in consequence of any change, alteration or removal ordered under the authority of this act, to be paid by the railroad company owning or operating the railroad in whose behalf the petition is brought; and in case said petition is brought by the selectmen of any town, the mayor and common council of any city, or the warden and burgesses of any borough, they may, if the highway affected by said determination was in existence when the railroad was constructed over it at grade, or if the lay-out of the highway was changed for the benefit of the railroad after the lay-out of the railroad, order an amount not exceeding one quarter of the whole expense of such alteration, change or removal, including the damages as aforesaid, to be paid by the town, city or borough in whose behalf the petition is brought, and the remainder of the expense shall be paid by the railroad company owning or operating the road which crosses such public highway. If however the highway affected by such order last mentioned has been constructed since the railroad which it crosses at grade, the railroad commissioners may order an amount not exceeding one half of the whole expense of such alteration, change or removal, including the damages as aforesaid, to be paid by the town, city or borough in whose behalf the application is brought, and the remainder of the expense shall be paid by the railroad company owning or operating the road which crosses such public highway.

The fifth section provides for the assessment of damages upon any such alteration of a highway, and the sixth for an appeal, by any party aggrieved, from the order of the railroad commissioners to the Superior Court.

Superior Court on appeal, after hearing all parties in interest, shall determine whether public safety requires any alterations, and, if so, what alterations shall be made, and by whom.

The railroads were generally built just as they now exist, not only with the express sanction of law, but to the great satisfaction of the public. In many instances the existing crossing would not have been so constructed but for the demand of the community to that effect. If the town had so desired the railroad could, without additional expense, have been built so as not to cross these highways at grade. But the people wanted the railroad on a level with the highways so that it might be more accessible from them and from adjoining factory sites. In many instances the increased danger which causes the town to complain of the railroad crossing is due entirely to the growth and increased prosperity of the community. But growth and additional prosperity may properly be held to devolve on the town new responsibilities to meet the new exigencies thereby generated. Towns as they grow into boroughs or cities have to alter the grade and construction of other highways than those which cross the railroads. The borough of Danielsonville in the town of Killingly has been created by the existence of the Norwich & Worcester Railroad. It is not wholly fair for the town to cheerfully accept its railroad as lawfully established in so far as that has built it up, and to refuse to accept the railroad as rightfully established in connection with its responsibilities to make the highways safe for the increased travel of the growing community. The town is responsible for public safety on the highway, and the railroad company is responsible for public safety on the railroad. The law provides that they may be ordered to coöperate in removing the danger caused by the intersection of the roads for which they are respectively responsible, and an order requiring this has been sustained by this court. *Town of Westbrook's Appeal from R. R. Commissioners*, 57 Conn., 95.

Under section 3489 of the General Statutes, which con-

tains the law as it had stood for many years, the railroad commissioners and the Superior Court on appeal determined, upon the circumstances of each particular case, and after a due hearing of the parties in interest, what proportion of the total expense of the changes ordered ought to and should be paid by the town and railroad company respectively. This was due process of law. Under such a law it may be, in a given case, that the Superior Court will decide that the railroad company shall pay the whole expense. It may be that the court will decide that each party shall pay half the expense. Whatever the event, the railroad company has no constitutional ground of complaint. It has had its day in court. It has been fully heard before an impartial tribunal. This tribunal has done what, upon all the facts disclosed, seemed to it to be just as between the parties. The new statute, so far as the present case is concerned, has simply added one provision, but that is a provision which substantially alters the nature of the whole proceeding. It has fettered the commissioners and the court with an arbitrary limitation of a kind entirely unknown to the law as it existed before. As the law now stands, the court may conclude that the railroad company should under all the circumstances pay two thirds of the expense of the changes ordered and the town one third, but it may not so decree. It may proceed freely and do justice, provided justice does not seem to call for apportioning more than one fourth of the expense to the town. Whether it be just as between the parties or not, at least three fourths of all the expense it must lay on the railroad company. This is not due process of law. The railroad company does not receive the equal protection of the laws.

The constitutional phrases, "law of the land," "due process of law," "due course of law," (Constitution of Connecticut, art. 1, secs. 9 and 12, and U. S. Constitution, 14th amendment), are all of one meaning and effect. "After volumes spoken and written with a view to their exposition, the good sense of mankind has at length settled down to this,—that they were intended to secure the individual from

APRIL, 1890. 537

N. York & N. England R. R. Co.'s Appeal from R. R. Commissioners.

the arbitrary exercise of the powers of government, unrestrained by the established principles of private rights and distributive justice." *Bank of Columbia* v. *Okely*, 4 Wheat., 235.

It is not "due process (or course) of law" to afford to parties a hearing before a proper tribunal, but to fetter this tribunal with an arbitrary rule forbidding it to apply the law of the land or any rules of distributive justice in case these would affect one of the parties to more than a certain extent. It is true that a railroad company is an artificial being whose franchises exist solely by virtue of a grant the terms of which the state has reserved a right to alter or amend. But the same may be said of a manufacturing company or any other corporation. In the great case which arose out of the annulling by the New York legislature of the Broadway Surface Railroad charter, the Court of Appeals set right the growing public misconception that power to amend or revoke a charter carries with it power to destroy or impair the property of the corporation, whether tangible or intangible. *People* v. *O'Brien*, 111 N. York, 1. In the present case, moreover, there is no pretext of an exercise of the power to amend a charter. Suppose a railroad company were ordered by the legislature to cross all the highways on its line above grade. It would probably prefer to abandon its franchise. This it would clearly have a right to do. Its property, apart from the franchise abandoned, would be unaffected by an order which was in form only a condition to the further exercise of such franchise. But the order in this case is of the nature of a personal judgment against the railroad company in a suit between it and the town. After the town has done the work assigned for it to do, it will have a money claim against the appellant.

Further : this railroad company is not the corporation by virtue of whose franchise this railroad was built and is maintained. It is simply operating the railroad of the Norwich & Worcester Railroad Company under a lease, which may be terminated at any moment. I, as an individual, might make with that company the same contract which the

appellant has made. Because I had agreed, so long as I thought fit, to operate its railroad on certain terms, I should surely not have lost all power to invoke the protection of the constitutional guarantees against an arbitrary discrimination between myself and a municipality in such a suit between us, commenced by that municipality, as is the one now before this court. The New York & New England Railroad Company stands in this matter exactly as any individual would. *Santa Clara County* v. *Southern Pacific R. R. Co.*, 118 U. S. R., 394.

The difficult question concerning the extent of the "police power" of the state does not arise in the present case. There is no doubt suggested of the right of the legislature to empower the railroad commissioners and the Superior Court to order such changes as public safety may require, and to compel the parties respectively responsible for the ways whose meeting at grade causes the existent danger, to execute the alterations ordered. These parties are recognized by the statute as responsible for the removal of the danger in uncertain and unascertained proportions varying with the different circumstances of different cases. It is no limitation on the "police power" of the state to say that the tribunal to whom the legislature assigns the duty of ascertaining the circumstances of the several cases as they from time to time arise, and of determining the just proportion in which the expense of the changes should be apportioned, must not be arbitrarily compelled to favor one of the parties before it at the expense of the other.

It is respectfully submitted that the provisions of the act of 1889 concerning the apportionment of expense in the class of cases to which the present one belongs, render the proceedings in this case unconstitutional and void, under both the constitution of this state and the constitution of the United States.

*M. A. Shumway*, for the appellee, cited—*Camp* v. *Rogers*, 44 Conn., 291; *Woodruff* v. *Catlin*, 54 id., 295; *Brayton* v. *City of Fall River*, 124 Mass., 95; *Thorpe* v. *Rutland and*

*Burlington R. R. Co.*, 27 Verm., 140; *Slaughter House Cases*, 16 Wall., 36; *Davidson* v. *New Orleans*, 96 U. S. R., 97; *Kelly* v. *Pittsburgh*, 104 U. S. R., 78.

CARPENTER, J.   This is an appeal from the doings of the railroad commissioners in ordering the separation of the grade of the highway from the grade of the railway where the Norwich & Worcester Railroad crosses Cottage street in the town of Killingly.   The application was made by the town.   In such cases the statute authorizes the commissioners to require the town to pay not to exceed twenty-five per cent of the cost of separating the two grades.   The commissioners ordered the separation, and apportioned one fourth of the expense to the town.   The Superior Court, on appeal, affirmed the order.   The appellants appealed to this court.

The sole question in the case is, whether that portion of the act which limits the sum to be apportioned to the town to one fourth of the whole expense is unconstitutional. This, it is claimed, is not due process, inasmuch as it may prohibit the commissioners from requiring of the town its just and fair proportion of the whole expense.

If the legislature should require the division of joint property between two persons equally interested in such a manner as to give one three fourths and the other but one fourth, it would be indefensible, being against natural right, and not due process of law.   So too of a statute that should attempt to compel one of two joint obligors, jointly and equally interested, to assume the whole obligation as between themselves.   But the case before us is not a case in which the legislature is attempting to apportion joint property or a joint contract obligation between the parties, but is a case of curing an evil where both parties, in some measure, but in different degrees, are responsible for the evil.   If two jointly commit a tort, whereby another is injured, the law will compel either party to pay the whole damage; and ordinarily no contribution is allowable.   This case is somewhat analogous; but we do not place our de-

cision on that ground. Two parties are engaged in legitimate business; both supply public wants, and both, in some sense, discharge governmental duties. Both furnish ways to facilitate public travel. The way of each crosses that of the other at grade, and more or less danger unavoidably attends their use. As the use increases the danger increases. The policy of the state now is to abolish these grade crossings as rapidly as can be reasonably done. Legislation on this subject assumes that each party, in the discharge of its duty, is concerned in creating the danger, and that each may justly be required to contribute to the expense of its removal; or that either may be required to pay the whole; and if each contributes, that the proportion which each shall pay may be determined by the legislature in each case as it arises, or by a general rule; by itself, or by a delegation of its power to the railroad commissioners. This exercise of power is justifiable on the ground that government itself, in the discharge of its governmental duties, undertakes to remove the danger; and does it in the same manner, and through the same instrumentalities, that it provides and maintains highways through and at the expense of towns and other corporations. So far as towns are concerned, it is a duty that has ever devolved upon them to keep the highways reasonably safe. They are compelled to act without compensation or pecuniary profit. Their sole motive is the public welfare. Railroad companies, in some sense, are but the agents of the government in affording to the public a more expeditious and vastly improved method of travel. As a compensation for their capital and labor invested they are permitted, as turnpike companies formerly were, to charge the public for the use of their ways. Unlike towns they do not act upon compulsion, but by choice. Their motive is private gain; public benefit is incidental. Advantage to the public is a reason for granting the franchise; but the enterprise itself is essentially a private one. They contribute largely to the danger, and the state may well require them to contribute largely to its removal.

In *Woodruff* v. *Catlin*, 54 Conn., on page 295, this court

said :—" The legislature having determined that the inter-
section of two railways with a highway in the city of Hart-
ford at grade is a nuisance dangerous to life, in the absence
of action on the part either of the city or of the railroads
may compel them severally to become the owners of the
right to lay out new highways and new railways over such
land and in such manner as will separate the grade of the
railways from that of the highways at intersection ; may
compel them to use the right for the accomplishment of the
desired end ; may determine that the expense shall be paid
by either corporation alone or in part by both ; and may
enforce obedience to its judgment.   That the legislature of
this state has the power to do all this for the specified pur-
pose, and to do it through the instrumentality of a com-
mission, it is now only necessary to state, not to argue."
Again :—" Three corporations create the nuisance and are
responsible to the public for its existence in as yet unmea-
sured and unknown proportions."

Here grade crossings are called, not in every sense per-
haps, nuisances.   It is not claimed that they are indictable,
or that either party in the absence of negligence would be
liable civilly ; yet they are in the nature of nuisances, and
are literally within Blackstone's definition—" Anything that
worketh hurt, inconvenience, or damage."

We think that it is competent for the state to cause them
to be abated, and that it may require any party responsible
for their existence to pay any part or all of the expense.
That being so, requiring the railroad company to pay three
fourths of the expense, however just it might be to require
the town to pay more than one fourth, is not a matter of
which the railroad company can legally complain.   The
statute may operate harshly, as all statutes are liable to in
certain cases, but it is not unconstitutional.

There is no error in the judgment appealed from.

In this opinion the other judges concurred.