N. York & N. Eng. R. R. Co.'s Appeal from Railroad Commissioners.

## THE NEW YORK & NEW ENGLAND RAILROAD COMPANY'S APPEAL FROM RAILROAD COMMISSIONERS.

Hartford Dist., Jan. T., 1893. ANDREWS, C. J., CARPENTER, TORRANCE, FENN and PRENTICE, Js.

The act of 1889 relating to grade-crossings, (Session Laws of 1889, ch. 220,) provides that "the directors of every railroad company which operates a railroad in this state, shall remove or apply for the removal of at least one grade-crossing each year for every sixty miles of road ; * * * and if the directors of any railroad company fail so to do the railroad commissioners shall, if in their opinion the financial condition of the company will warrant, order such crossing or crossings removed as in their opinion said directors should have applied for the removal of under the above provisions." Held—

1. That the statute operates as an amendment of the charter of each of the railroad corporations affected by it.
2. That as grade-crossings are in the nature of nuisances the legislature has a right to cause them to be abated, and to require either party to pay the whole or any portion of the expense.
3. That the statute is not unconstitutional because it authorizes the railroad commissioners to determine their own jurisdiction; besides which the right of appeal saves the railroad companies from any harm from their findings.
4. That the railroad commissioners were proper parties defendant to an appeal taken from an order made by them under the statute.

It is the settled policy of the state to abolish grade-crossings as rapidly as can reasonably be done.

All general laws and police regulations affecting corporations are binding upon them without their assent.

[Argued January 4th—decided March 6th, 1893.]

APPEAL of the New York & New England Railroad Company from an order of the railroad commissioners requiring the company to remove a grade-crossing in the town of Bristol ; taken to the Superior Court in the county of Hartford, and heard before *F. B. Hall, J.* The railroad commissioners were made respondents, with the town of Bristol and sundry land owners. Facts found and judgment rendered for the appellees, and appeal by the railroad company. The case is sufficiently stated in the opinion.

*S. E. Baldwin* and *E. D. Robbins*, for the appellants.

1. The railroad commissioners are not entitled to defend. In a proceeding of this character they hold a *quasi* judicial position. It is contrary to all notions of ordinary judicial administration that the same persons should act as judges in a tribunal of original jurisdiction, first *ex parte*, and then on a formal hearing, and subsequently appear as parties to defend their judgment in an appellate tribunal. The town and the land owners were the only parties who could properly plead in defense to the appeal, unless the state's attorney had seen fit to intervene in behalf of the general public. *Dailey* v. *City of New Haven*, 60 Conn., 314, 325. Our motion to strike out their answer should therefore have been granted.

2. The statute under which the order was made is unconstitutional. It is no justification for the judgment of the court below, because it takes our property without due process of law, and denies us the equal protection of the laws, in violation of the 14th amendment to the constitution of the United States. Its terms are as follows:—" The directors of every railroad company which operates a railroad in this state, shall remove or apply for the removal of at least one grade crossing each year for every sixty miles of road operated by it in this state, which crossings, so to be removed, shall be those which in the opinion of said directors are among the most dangerous ones upon the lines operated by it: and if the directors of any railroad company fail so to do, the railroad commissioners shall, if in their opinion the financial condition of the company will warrant, order such crossing or crossings removed as in their opinion the said directors should have applied for the removal of under the above provisions; and the railroad commissioners in so doing shall proceed in all respects as to method of procedure and assessment of expense as if the said directors had voluntarily applied therefor." Public Acts of 1889, ch. 220, sec. 1. It is not due process of law to authorize three men, holding the office of railroad commissioners, first to decide *ex parte* that a certain railroad company must go to large expense in removing

a certain grade-crossing, and to have a formal hearing on the same subject after they have prejudged the case, and then to throw the entire expense of the work on the railroad. *Camp* v. *Rogers*, 44 Conn., 291, 297; *Yick Wo* v. *Hopkins*, 118 U. S. R., 356. . A corporation is a person within the meaning of the 14th amendment. *Santa Clara County* v. *So. Pacific R. R. Co.*, 118 U. S. R., 394. The courts have a right to inquire whether any legislative act, in the exercise of the police power, imposes an unreasonable burden on any person, and, if it is unreasonable, to declare it void. *Chicago & N. W. R. R. Co.* v. *Dey*, 35 Fed. Rep., 879; *Dow* v. *Beidleman*, 125 U. S. R., 680, 690; *Chicago etc. R. R. Co.* v. *Minnesota*, 134 id., 418; *Pensacola etc. Railway Co.* v. *The State*, 25 Fla., 310. This is not like *Woodruff* v. *New York & New England R. R. Co.*, 59 Conn., 83, or *Budd* v. *New York*, 143 U. S. R., 517, cases where the legislature itself imposed the particular burden on the party complaining. The commissioners acted under a limited power, as subordinate authorities of the state. The judgment of the court below is one merely of affirmance. If the original order was wrong the judgment of affirmance is wrong. The proceeding before the commissioners gave us no day in court. They had avowedly prejudged our case before summoning us before them. The hearing they gave us, after such a prejudication, was a mere mockery. *Murdock, Appellant*, 7 Pick. 303, 328; *Murdock* v. *Phillips Academy*, 12 id., 262, 265. It was not due course of law under our state constitution, nor due process of law under that of the United States, to decide on our rights without previous notice and hearing. *Lent* v. *Tillson*, 140 U. S. R., 316, 328; *Bostwick* v. *Isbell*, 41 Conn., 305, 307. Nor do we have the equal protection of the laws. No natural person can be treated as we were treated. Nor does the statute apply to all railroad companies even, but only to those whom the railroad commissioners are pleased to single out, *ex parte*, as deserving of censure, for not having moved spontaneously in the matter of removing grade-crossings during the year. *Soon Hing* v. *Crowley*, 113 U. S. R., 703.

3. The order expunging certain of our allegations was

erroneous.   Unless, in the language of our rules, there is no reasonable ground for pleading the matter to which objection is made, it cannot be struck out.

4. The court committed an error in ruling out the evidence as to the Morgan St. order and as to the New England Terminal Company.

*J. J. Jennings*, for the appellees.

ANDREWS, C. J.   The danger of grade-crossings has received the attention of the General Assembly of this state on numerous occasions.   That every such crossing is a menace to human life is recognized, and repeated enactments, each supposed to be more stringent and effective to lessen the danger than former ones, have from time to time been passed. Indeed the legislative will seems now to have become settled that all such crossings shall be removed without unnecessary delay.

To carry out this determination the General Assembly at its session in 1889 passed an act entitled " An Act relating to Grade Crossings."   This act, which is chapter 220 of the public acts of 1889, is given in full in a note below.*   It pro-

---

* SECTION 1. The selectmen of any town, the mayor and common council of any city, the warden and burgesses of any borough, within which a highway crosses or is crossed by a railroad, or the directors of any railroad company whose road crosses or is crossed by a highway, may bring their petition in writing to the railroad commissioners, therein alleging that public safety requires an alteration in such crossing, its approaches, the method of crossing, the location of the highway or crossing, the closing of a highway crossing and the substitution of another therefor not at grade, or the removal of obstructions to the sight at such crossing, and praying that the same may be ordered; whereupon the railroad commissioners shall appoint a time and place for hearing the petition, and shall give such notice thereof as they judge reasonable to said petitioner, the railroad company, the municipalities in which such crossing is situated, and to the owners of the land adjoining such crossing and adjoining that part of the highway to be changed in grade; and after such notice and hearing said commissioners shall determine what alterations, changes or removals, if any, shall be made and by whom done; and if the aforesaid petition is brought by the directors of any railroad company, or in behalf of any railroad company, they shall order the expense of such alterations or removals, including the

vides that "the directors of every railroad company which operates a railroad in this state, shall remove or apply for the

damages to any person whose land is taken, and the special damages which the owner of any land adjoining the public highway shall sustain by reason of any change in the grade of such highway in consequence of any change, alteration or removal ordered under the authority of this act, to be paid by the railroad company owning or operating the railroad in whose behalf the petition is brought; and in case said petition is brought by the selectmen of any town, the mayor and common council of any city, or the warden and burgesses of any borough, they may, if the highway affected by said determination was in existence when the railroad was constructed over it at grade, or if the layout of the highway was changed for the benefit of the railroad after the layout of the railroad, order an amount not exceeding one-quarter of the whole expense of such alteration, change or removal, including the damages as aforesaid, to be paid by the town, city or borough in whose behalf the petition is brought, and the remainder of the expense shall be paid by the railroad company owning or operating the road which crosses such public highway; if, however, the highway affected by such order last mentioned has been constructed since the railroad which it crosses at grade, the railroad commissioners may order an amount not exceeding one-half of the whole expense of such alteration, change or removal, including the damages as aforesaid, to be paid by the town, city or borough in whose behalf the application is brought, and the remainder of the expense shall be paid by the railroad company owning or operating the road which crosses such public highway. The directors of every railroad company which operates a railroad in this state shall remove or apply for the removal of at least one grade crossing each year for every sixty miles of road operated by it in this state, which crossings, so to be removed, shall be those which in the opinion of said directors are among the most dangerous ones upon the lines operated by it; and if the directors of any railroad company fail so to do, the railroad commissioners shall, if in their opinion the financial condition of the company will warrant, order such crossing or crossings removed as in their opinion the said directors should have applied for the removal of under the above provisions; and the railroad commissioners in so doing shall proceed in all respects as to method of procedure and assessment of expense as if the said directors had voluntarily applied therefor.

Sec. 2. The railroad commissioners may, in the absence of any application therefor, when in their own opinion public safety requires an alteration in any highway or highways crossed at grade by a railroad or by railroads belonging to or operated by more than one company, after a hearing had upon such notice as they shall deem reasonable to the railroad company or companies owning or operating said railroad or railroads, and to the selectmen of the town, mayor of the city or warden of the borough within which said highway or highways are situated, and to the owners of the land adjoining said crossing, order such alterations in such highway or highways as they shall deem best, and shall determine and direct by whom

removal of at least one grade-crossing each year for every sixty miles of road operated by it in this state, which cross-

such alterations shall be made, at whose expense, and within what time; *provided* that in all cases arising under this section one-fourth of the expense, including damages and special damages as aforesaid, shall be paid by the state, and the remainder shall be assessed upon the railroad company or companies benefited by such order; *and provided* that such alterations as are thus made at the primary instance of the railroad commissioners shall not be ordered so as to direct the construction of more than one bridge in any one year on any one railroad.

SEC. 3. Railroad companies may take land for the purpose of this act in the manner provided by law for the taking of lands by railroad companies.

SEC. 4. Whenever the railroad commissioners upon an application brought under the provisions of section one of this act, shall find that any highway crosses or is crossed by the tracks of more than one railroad, and the tracks of such railroads are so near together that public convenience requires the work of separating the grades to be done under and in compliance with one order, they shall give notice to all the companies operating said railroads to appear before them and be heard upon the application, and after such notice and hearing said commissioners shall determine what alterations shall be made, if any, so as to separate the grades of all of said crossings at the same time, and they shall determine by whom such work shall be done, and they shall apportion the expense to be borne by the railroad companies between such companies in such manner as they, the said commissioners, shall deem proper.

SEC. 5. Damages under the provisions of this act on account of any change of grade in highways shall be assessed in the same manner as in the case of land taken for railroad purposes; and the provisions of this act in relation to such damages for change of grade shall apply in the case of any order passed by the railroad commissioners or Superior Court since June first, 1887, under the authority conferred by section 3489 of the General Statutes.

SEC. 6. The provisions of section 3491 of the General Statutes in relation to appeals shall apply to any decision of the railroad commissioners under the authority of this act.

SEC. 7. It shall be the duty of the railroad companies to maintain and keep in repair all structures erected over their tracks at any highway crossing, but it shall be the duty of the municipality in which the structure is situated to keep in repair the surface of the highway, including the planking or other surface material of the highway upon such structure.

SEC. 8. The provisions of this act shall apply to any cause or application now pending before the railroad commissioners or Superior Court. All provisions of the General Statutes which relate to sections 3483 and 3489 of the same shall be deemed to apply to the provisions of this act.

SEC. 9. Sections 3483 and 3489 of the General Statutes are hereby repealed, but no rights, duties or obligations belonging to or imposed upon any parties by any judgments heretofore rendered, shall be impaired or altered by such repeal.

ings so to be removed shall be those which in the opinion of the directors are among the most dangerous ones upon the lines operated by it; and if the directors of any railroad company fail so to do, the railroad commissioners shall, if in their opinion the financial condition of the company will warrant, order such crossing or crossings removed as in their opinion the directors should have applied for the removal of under the above provisions; and the railroad commissioners in so doing shall proceed in all respects as to method of procedure and assessment of expenses as if the said directors had voluntarily applied therefor."

. In an earlier part of the same section the rule of procedure to be followed by the commissioners in making such order is given, as follows :—" And if the aforesaid petition is brought by the directors of any railroad company, or in behalf of any railroad company, they shall order the expense of such alterations or removals, including the damages to any person whose land is taken, and the special damages which the owner of any land adjoining the public highway shall sustain by reason of any change in the grade of any such highway in consequence of any change, alteration or removal ordered under the authority of this act, to be paid by the railroad company owning or operating the railroad in whose behalf the petition is brought."

All the prior statutes respecting grade-crossings had been permissive. They had authorized the directors of any railroad or the proper officers of a municipality to apply to the railroad commissioners for an order by which some grade-crossing should be removed. None of them had made it compulsory upon any one to ask for such an order, nor had they laid the duty upon any one to take the steps necessary to remove such crossings. As expenses—sometimes quite large expenses—would be incurred in the changes incident to such removal, perhaps it is not strange that those statutes had done very little to abate the evil aimed at. The legislature of 1889 proceeded to apply a more rigorous rule. While leaving the permissive features of the former acts to remain in force, they commanded the directors of every railroad in

the state to remove or to apply for the removal of a certain ratable number of the most dangerous grade-crossings on the roads operated by them.   But the railroad directors were interested and might not obey the command, and another provision was added.   Jurisdiction was conferred on the railroad commissioners.   It is this last provision which the present case brings before the court for examination.   What is the power of the railroad commissioners conferred by the act?   And how must they proceed?

In arriving at the legislative intent as expressed in any statute it is always expedient to recur to the circumstances which surrounded the legislature at the time the statute was passed.   In 1889 there was an urgent public demand for efficient legislation to remove the danger arising from grade crossings.   At that time the Asylum Street Bridge Commission was about finishing its labors.   That commission had been created by the legislature and directed to take such steps as were needed to remove a grade-crossing in Asylum street in the city of Hartford.   The validity of that commission had been established.   Its efficiency and success had been demonstrated.   In that instance by the instrumentality of a commission one grade-crossing of exceptional danger had been removed.   That was a precedent which might safely be followed.   All grade-crossings were dangerous, although not so highly dangerous as the one in Asylum street.   A special commission was needed for the removal of that one. But in ordinary cases a general commission would be adequate.   In the Asylum street case the legislature acted because the railroads and the municipality neglected to act. That commission was successful because it was the instrument of the supreme power of the state.   If in other cases the directors of railroads disobeyed the commands of the statute and neglected to remove the dangerous crossings, another commission acting in like manner by the supreme power of the state would be likely to be successful.   In the one case the legislature had proceeded upon the theory that the Asylum street crossing was a nuisance dangerous to human life.   Now the legislature was about to proceed upon the

MARCH, 1893. 535

N. York & N. Eng. R. R. Co.'s Appeal from Railroad Commissioners.

theory that all such crossings were nuisances dangerous to human life. Reading the statute now in question in the light of these circumstances, it is impossible not to believe that the legislature intended to invest the railroad commissioners, in the cases of grade-crossings over which they were given jurisdiction by this act, with power of the same kind as and clearly analogous to the power with which the special commission had been invested. The general commission, like the special one, was to be an instrumentality of the supreme power to remove dangerous nuisances.

What was said by this court of the statute which created that special commission may with equal justice be said of the statute of 1889. "In scope and purpose it concerns the protection of life. Neither in intent nor fact does it increase or diminish the assets of any railroad corporation. It is the exercise of the governmental power and duty to secure safe highways. The legislature having determined that the intersection of a railway with any highway at grade is a nuisance dangerous to life, in the absence of action on the part of the municipality or of the railroad may compel them to become the owner of the right to lay out new highways and new railways over such land and in such manner as will separate the grade of the railway from that of the highway at intersections; may compel them to use the right for the accomplishment of the desired end; may determine that the expenses shall be paid by either corporation alone, or in part by both, and may enforce obedience to its judgment. That the legislature of the state has the power to do all this for the specified purpose, and to do it through the instrumentality of a commission, it is now only necessary to state not to argue." On the 12th day of March, 1891, the railroad commissioners, intending to obey the command contained in that act, and to conform to the rule of procedure therein prescribed, issued an order in which, after reciting that the directors of the New York & New England Railroad Company had failed to remove or apply for the removal during the year ending August 1st, 1890, of any grade crossing of a highway which crossed or was crossed by their railroad,

and that in their (the railroad commissioners') opinion the said directors should have applied for the removal of the grade crossing of their road and the highway known as Main street in the town of Bristol, and also the various notices, appearances and hearings that had been had in the matter, they ordered and directed as follows :—" And now, after such notices and hearings, we, being of opinion that the financial condition of the said New York & New England Railroad Company will warrant such order, and that public safety requires the same, do hereby order such crossing removed, and do determine and order that the following alterations, changes and removals be made and done, to wit :—That the method of crossing be altered so that said highway, instead of crossing said tracks at grade as at present, be carried under said tracks, and for that purpose that the location of said crossing be changed by the removal of said tracks," (setting out minutely the changes to be made).  " All of said changes and alterations and removals to be made and done by said railroad company, and the expenses thereof, including the damages to any person whose land is taken, and the special damages which the owner of any land adjoining the public highway shall sustain by reason of any change in the grade of such highway in consequence of any change, alteration or removal ordered, to be paid by said railroad company."

From that order the railroad company made the present appeal to the Superior Court in Hartford County.  They made the town of Bristol, the railroad commissioners, and divers other parties, defendants, and caused notice to be served on them to appear and make answers.

In the Superior Court there were various pleadings filed, sundry motions were made, and there were orders thereon, there was a hearing and judgment affirming the order of the railroad commissioners, and a finding of facts as follows :—

" Said railroad company is, and at the date of said order was, of sufficient ability to execute said order of the railroad commissioners, and the financial condition of said company was at the time of the making of said order, and is, such as to warrant the order for the removal of said crossing.  Said

crossing so ordered to be removed is one of the most dangerous ones upon the line of said railroad, and the said order was necessary for the safety of the public. At the commencement of the trial the plaintiff moved to strike out the answer of the railroad commissioners, upon the ground that they were not entitled under the statute to appear and defend in said proceeding in this court. The court denied the motion and the plaintiff excepted to said ruling. The plaintiff offered to prove that in December, 1890, the railroad commissioners, in a proceeding against the New York, New Haven & Hartford Railroad Company, ordered the removal of a grade crossing on Morgan street in the city of Hartford in such manner as to require one fourth the expenses of such removal to be paid by the state. Said evidence was offered in support of the allegation in paragraph seventeen of the plaintiff's petition. Upon objection of the defendant the court excluded the evidence and the plaintiff excepted to said ruling."

From that judgment the railroad company has appealed to this court. The several grounds of appeal, as they are mentioned in the appellant's brief, are :—

1st. That the railroad commissioners were not entitled to appear and defend.

2d. That the statute is unconstitutional.

3d. That the order expunging various paragraphs of the appeal was erroneous.

4th. That it was error to reject the evidence concerning the Morgan street order.

5th. That it was error to admit the evidence concerning the New England Terminal contract.

6th. That all the issues are not disposed of by the judgment.

There was no error in overruling the plaintiff's motion, not made till the opening of the trial, that the answer of the railroad commissioners be stricken out on the ground that they were not entitled to appear in the matter. The plaintiff having caused the commissioners to be brought into court and having joined issue with them upon their answer, was

not in a position to ask that they be denied an opportunity to be heard. But without this, we think the relation of the railroad commissioners in these proceedings to the state and to the railroad company was so analogous to the position of the special commission in the Asylum street bridge case, that they rightfully were there in court. They represented the state.

The statute is in its operation an amendment to the charter of each of the railroad corporations affected by it. It imposes on the plaintiff, being a corporation of that kind, an obligation which previous to its passage the charter of the plaintiff did not impose. But as that charter contained the provision that it might be altered at pleasure by the legislature, the statute is binding upon it.

All general laws and matters of police regulation affecting corporations are binding upon them without their assent. *New York & New England R. R. Co.* v. *City of Waterbury,* 60 Conn., 1 ; *Bulkley* v. *New York & New Haven R. R. Co.,* 27 id., 479 ; *English* v. *New Haven & Northampton Co.,* 32 id., 240 ; *City of Bridgeport* v. *New York & New Haven R. R. Co.,* 36 id., 264. That the legislature may rightfully and constitutionally impose such additional obligations upon a railroad company it is now too late to question. *New York & New England R. R. Co.'s Appeal from R. R. Commissioners,* 58 Conn., 532. Such legislation violates no contract, takes away no property, and interferes with no vested right. *Woodruff* v. *Catlin,* 54 Conn., 277 ; *Woodruff* v. *New York & New England R. R. Co.,* 59 id., 63 ; *People ex rel. Kimball* v. *Boston & Albany R. R. Co.,* 70 N. York, 569 ; *Railroad Co.* v. *Richmond,* 96 U. S. R., 521 ; Cooley's Const. Lim., (5th ed.,) 672. As stated above, the act of 1889 retains the permissive features of prior enactments and authorizes the railroad commissioners to act in the removal of a grade crossing upon the application of the selectmen of any town, but provides that in such case the town shall be required to pay not more than one fourth the expense. An application under that part of the statute arose in the town of Killingly and is the case reported in 58 Conn., 532,

*New York & New England R. R. Co.'s Appeal.* It was strenuously argued in that case that the statute was unconstitutional. This court then said :—" The policy of the state now is to abolish these grade crossings as rapidly as can be reasonably done. Legislation on this subject assumes that each party in the discharge of its duty is concerned in creating the danger, and that each party may justly be required to contribute to the expense of its removal, or that either may be required to pay the whole, and, if each contributes, that the proportion that each shall pay may be determined by the legislature in each case as it arises, or by a general rule ; by itself or by a delegation of its powers to the railroad commissioners. This exercise of power is justifiable on the ground that government itself in the discharge of its governmental duties undertakes to remove the danger, and does it in the same manner and through the same instrumentalities that it provides and maintains highways through and at the expense of towns and other corporations. So far as towns are concerned it is a duty that has ever devolved upon them to keep the highways reasonably safe. They are compelled to act without compensation or pecuniary profit. Their sole motive is the public welfare. Railroad companies in some sense are but agents of the government in affording to the public a more expeditious and vastly improved method of travel. As a compensation for their capital and labor invested they are permitted, as turnpike companies formerly were, to charge the public for the use of their ways. Unlike towns they do not act upon compulsion but by choice. Their motives are private gain ; public benefit is incidental. Advantage to the public is a reason for granting the franchise ; but the enterprise is essentially a private one. They contribute largely to the danger, and the state may well require them to contribute largely to its removal. * * * Grade-crossings are called, not in every sense perhaps, nuisances. It is not claimed that they are indictable or that either party in the absence of negligence would be civilly liable, yet they are in the nature of nuisances and are literally within Blackstone's definition—' anything that

worketh hurt, inconvenience or damage.' We think it is competent for the state to cause them to be abated, and they may require any party responsible for their existence to pay any part or all of the expenses. That being so, requiring the railroad company to pay three-fourths of the expense, however just it might be to require the town to pay more than one-fourth, it is not a matter of which the railroad company can legally complain. The statute may operate harshly, as all statutes are liable to in certain cases, but it is not unconstitutional."

It being established by the legislature and by the repeated decisions of this court that grade-crossings are in the nature of nuisances and dangerous to life, the right of the legislature to cause them to be abated and to require either party to pay the whole or any portion of the expense cannot be questioned. *Raymond* v. *Fish*, 51 Conn., 80; *Dunham* v. *City of New Britain*, 55 id., 378; *State* v. *Worden*, 56 id., 216; *Miller* v. *Horton*, 152 Mass., 540.

A further question raised by the plaintiff under the second reason of appeal is that the statute is unconstitutional because it authorizes the railroad commissioners to make their own jurisdiction. This objection cannot be sustained. The jurisdiction given to the railroad commissioners to proceed on their own motion to order the removal of any grade-crossing in any particular instance depends on two conditions; first, the failure of the directors to remove or apply for its removal; of such failure the railroad commissioners would have official knowledge; second, the opinion of the commissioners that the crossing is one for the removal of which the directors ought to have applied, and their opinion that the financial condition of the railroad company is such as will warrant the order. It is a sound rule of construction that when a statute gives discretionary power to any person to be exercised by him upon his own opinion of certain facts, the statute makes him sole and exclusive judge of the existence of those facts. *Martin* v. *Mott*, 12 Wheat., 19, 29, *per* STORY, J.; *Luther* v. *Borden*, 7 Howard, 45, *per* TANEY, C. J. There is really no occasion for the applica-

tion of this rule of construction. The right of appeal being afforded, the plaintiff could not be harmed by any finding the commissioners should make. They had the right to be, as in fact they were, fully heard in the Superior Court upon all the disputed questions in the case. It was admitted— certainly it was not denied—that the plaintiff's directors had neglected to comply with the legislative command to remove grade-crossings. And it is found that the one ordered to be removed by the commissioners was one of the most dangerous upon the line of the railroad and that its removal was necessary for the public safety, and that the financial condition of the plaintiff was such as to warrant the order made by the commissioners.

In the third reason of appeal the plaintiff claims to be aggrieved because certain of the paragraphs of its original application were expunged. Giving the most liberal construction to the statute in favor of the plaintiff, the only questions in the case which were material, or upon which there could be any issue, were—1st, whether or not the plaintiff's directors had removed or applied for the removal of a grade-crossing as required by the statute ;—2d, whether or not the grade-crossing ordered to be removed by the commissioners was in fact a dangerous one, and one which the directors ought to have removed, or for the removal of which the directors ought to have applied ; 3d, whether or not the financial condition of the plaintiff was such as to warrant the order. The practice act forbids a party to set out in its pleadings the evidence by which the material facts are to be proved. All the averments expunged from the plaintiff's application were statements of evidential facts tending to show the plaintiff's financial condition. They were properly stricken out.

The order made by the railroad commissioners in the case of the Morgan street crossing was properly rejected. That order was made under another part of the statute and was against another railroad company. It was a matter between other parties. *Bethlehem* v. *Watertown*, 47 Conn., 237 ; *Burdick* v. *City of Norwich*, 49 id., 225 ; 1 Greenleaf's Ev., § 524.

If the Superior Court erred in admitting in evidence the contract made by the plaintiff with the New England Terminal Company, we are not able to see how the plaintiff was injuriously affected. It was an immaterial error. And according to section 1125 of the General Statutes we ought not to reverse the judgment or grant a new trial for that reason. It fully appears that all the material issues in the case were disposed of by the finding and the judgment.

There is no error in the judgment appealed from.

In this opinion the other judges concurred.