The application to the Superior Court, for an alternative mandamus against the defendant, states that subsequent to the decision of this court inWoodruff v. New York England R. R.Co., 59 Conn., 63, and pending further litigation both in the federal and state courts, there was a conference between the representatives of the defendant, of the relator, whom we will call the plaintiff, and of the city of Hartford, which resulted in a compromise and arrangement of settlement, pursuant to which the surface tracks of the plaintiff's railroad, between the north line of Church street and Asylum street in Hartford, were taken up, and the plaintiff presented to the defendant commission a claim for damages for such removal, and for sundry other *Page 93 
matters of damage to the plaintiff, incident to the general elevation of its tracks over Asylum street, and the changes necessarily consequent thereon; that the commission heard the plaintiff, allowed certain claims, and disallowed others as not arising in consequence of any order of the commission, concerning which disallowance no complaint is now made; and also, in reference to certain other items, disallowed them on the ground, as stated by the commission, "that the damages, if any, are not special to the New York New England Railroad Company, to be taken account of as a part of the entire expense of the improvement, but such as are incidental to the carrying out of the design and instructions of the legislative acts creating and regulating this board, and for public safety, convenience and necessity." These items were as follows:
 "Land of the company taken for retaining wall, running north
from Church street about 890 feet, and amounting to about
6,900 square feet. .............................................. $15,600.00
 "Destruction of old station building on Spruce street, and
loss of rentals received and receivable there from, ............. $45,000.00
 "Cost of re-surfacing temporary tracks on each side of
Asylum street, ................................................... $1,224.71
 "Amount paid to administrator of John Connelly, who lost his
life while employed by the company on work ordered by the
commission, ........................................................ $150.00
 "Cost of extra switching freight and passenger trains, due
to the interruption of the tracks in consequence of the work
ordered by the commission, ....................................... $6,792.40
 "Salary of additional telegraph operators from June 1st,
1887, to June 30, 1889, .......................................... $1,250.00
 "Cost of fitting up temporary office, made necessary by
destruction of old station, $320.28; and rent of temporary
office from Oct. 1st, 1887, to June 30th, 1889, $749.97 .......... $1,070.26
 *Page 94 
 "Cost of temporary station for use until elevated structure
was completed, ................................................... $4,143.71
 "Additional cost of transporting baggage between the
temporary stations of the two roads on each side of elevated
structure, ....................................................... $1,305.00
 Difference between the value of the land between Church and
Asylum streets, for the purpose it can now be used for, and
its value for railroad purposes, as it could have been used
prior to the removal of the tracks on Church street, ........... $200.000.00
 "Impairment of value of yard north of Church street,
consequent on changes incident to the work ordered by the
commission, and to the removal of the tracks across Church
street ......................................................... $100,000.00
 "Damage from interruption of use of territory between Asylum
street and Walnut street from April, 1887, to the present
time, .......................................................... $10,000.00"

The application alleged that all of these disallowed items were for damages to the plaintiff, which the commission had power, under the legislative acts, to take account of as a part of the entire expense of the improvement, and that the commission ought to have inquired in to the facts concerning such items, and, if maintained by proper proof, to have allowed them, but that they were disallowed on motion of counsel for the city of Hartford, without hearing evidence as to their merits, and for the reason before stated; and the application concludes with a motion that an alternative writ of mandamus issue, requiring the commission to inquire into the merits of these claims, and, if any such damages shall be found to be proved and justly due, to order their allowance and payment as a part of the entire expense of the Asylum street bridge improvement. The Superior Court having granted a rule to show cause, the defendant filed a motion to quash, presenting various legal issues, which it is not necessary to recite. The court found these issues for the defendant, and that the application was insufficient, and thereupon granted the motion and denied the application, and the plaintiff appealed to this court, which heard and *Page 95 
refused the defendant's motion to erase the case from the docket, and afterwards the parties were fully heard upon all the grounds presented by the plaintiffs reasons of appeal. These reasons need not be enumerated, since they may be fairly held to present and cover all phases of the broad general question — Ought the writ to issue? And was the judgment of the Superior Court denying it erroneous?
The first subordinate inquiry under this general one is, whether the action of the commission is subject to direction by mandamus. Manifestly a negative answer will dispose of the case. What then are the powers which the legislature have conferred upon the commission? The answer may be found in the language of the acts which created it, quoted at length in 59 Conn. R., pp. 66, 7, 8. It is expressly declared in section four of the amended act of 1885, as there printed, that the commission shall possess all of the powers of the General Assembly, "and may direct by whom, when and how, the work shall be performed, and who shall pay for the same, and what proportion of the entire expense, including land damages, each party shall pay and bear; and they may, in the event of any disagreement between the parties, determine the cost of the whole or any portion of the work, and make any and all orders as to the manner and amount of payment which they may judge reasonable; provided, however, that in no event shall said city of Hartford be required to pay any portion of the cost of any changes in the present depot, and not exceeding one half of all the other expenses, including land damages, incurred under this resolution." It would seem as if, subject only to the limitation upon the assessment against the city of Hartford, no grant of power could be more plenary or conferred in more explicit and unqualified terms, and that the duties to be performed by the commission were such as in the highest degree to call for the exercise of judgment and discretion. And that a writ of mandamus will never issue "in a case where the effect of it is to direct or control an executive officer in the discharge of an executive duty involving the exercise of discretion and judgment," has been so often decided by this court, and is so *Page 96 
fundamental, that, to borrow the language of Judge Loomis inBatters v. Dunning, 49 Conn., 480, it "is too obvious to require the citation of any authorities." It is only fair to the plaintiff to say that it does not assume to claim that the commission, in the use of its discretion, in the exercise of the powers conferred, and the discharge of the duties imposed upon it by the legislature, is subject to judicial interference by mandamus. The contention is that it is by the legislative authority made the duty of the commission to find, and then to apportion between the two railroad corporations and the city of Hartford, the entire expense, loss and damages to all, caused by or resulting from the execution of the orders made by such commission; that while, as to the amount of such damage, and as to its relative apportionment, subject of course to the limitations relating to the city of Hartford, the judgment of the commission is exclusive and final, the duty to find and to apportion the entire amount is direct, positive and perfect; and that such duty is therefore not the exercise of a discretionary power by the commission, since in regard to it it has none, but is to it a matter of plain duty, and to the plaintiff of absolute right; and that hence, if the commission fail to discharge such duty, the court will lend its aid by mandamus to the plaintiff to compel such performance and to enforce such right. And the plaintiff claims further, if it shall be held that it is within the discretion of the commission to determine whether the rejected items of claimed damage to the plaintiff ought or not to be considered and apportioned as a part of the entire expense, that it is manifest, from the recorded and recited action of the commission, that it utterly failed to exercise that discretion and refused to consider such items, solely because of an erroneous idea that it was not within its jurisdiction to do so, and that such an error can be corrected, and can only be corrected and remedied, by mandamus, which will declare the true extent of the jurisdiction of the commission and direct its full exercise, namely, that the commission "inquire into the merits of the damage claims presented, and if any such damage shall be proved and found to be justly due, to order its *Page 97 
allowance and payment as part of the entire expense of the Asylum street bridge improvement." Now, while the general principles relating to mandamus, upon which the plaintiff relies in this contention, that is to say, that where it appears or can be proved that there is a fixed, definite, precise act, which it is the absolute duty of a public officer to do, in a particular way and at a particular time which has arrived, and the clear legal right of a party to have so done — a right concerning a substantial matter, and there is no other legal remedy, the performance of such act, of such duty, the enforcement of such right, can be secured by mandamus; and also that the exercise of existing discretion by the officer vested with it may itself be an act of such fixed, definite and precise nature, and so the absolute duty of the officer and right of a party, that such officer may be compelled by mandamus in case of refusal, no matter what the ground of such refusal may be, to exercise such discretion to hear and determine, although as to such determination, beyond the simple direction to make it, he must be left free. While these doctrines seem well settled, and have been affirmed by this court in repeated decisions, in order to warrant the plaintiff in the application which it would make of such doctrines, and the result which it claims, it would be necessary, in reference to the first part of its contention, namely, that it was mandatory upon the commission to take these items into their consideration, to construe the language of the legislature, which we have quoted, very differently from the natural and ordinary import of the language used. That language apparently had strict reference to work to be ordered and directed done by the commission, concerning which it was declared that the commission might "direct by whom, when and how the work shall be performed, and who shall pay for the same, and what proportion of the entire expense, including land damages, each party shall pay and bear; and they may, in the event of any disagreement between the parties, determine the cost of the whole or any portion of the work." So clearly is this language, both by its context and by its terms, confined and limited to "expense" and "cost" of "work," that it was *Page 98 
deemed necessary to expressly say "including land damages," lest otherwise even the cost and expense of land, which the preceding section authorized the railroad companies and the city of Hartford to take, might be regarded as not included. We may add that the proviso as to the city of Hartford, which follows the language just quoted, that the city should not be "required to pay any portion of the cost of any changes in the present depot or of the construction of any new depot," adds confirmation to this intent. It would seem idle to protect the city from any items of cost actually incurred in any changes, if at the same time it was left open to liability for what might be found infinitely greater sums, for speculative, consequential and incidental damages, and loss resulting from such changes or improvements. But in order to support the plaintiff's claim it must be held that notwithstanding this language of the legislative acts, or rather, as we shall presently show, by virtue of such language, it was, it thereby became, the duty of the commission, in the words of the plaintiff's brief, "to estimate the entire expense of the improvement in accordance with the ordinary rules of law. It is the duty of the commission to ascertain the entire expense. If the items of expense which we present are such as in a court of law should be considered in estimating the entire expense, the commission, in refusing to consider them, has simply refused to do that which the law expressly directs it to do. It was not an act which they could do or refuse to do at discretion." It seems to us that the plaintiff reaches this conclusion only by a confusion of terms and things. There is in this case no occasion to inquire what items of damage to the owner are or may be considered when private property is taken for public use through the exercise of the right of eminent domain. No such property, no property of the plaintiff, was so taken. The plaintiff admits in its brief that it was held by this court, in the two cases in which these acts were considered, Woodruff v. Catlin,54 Conn., 277, and Woodruff v. New York NewEngland R. R. Co., 59 Conn., 63, that the power exercised by the state, through the commission, was the police power *Page 99 
in abating a nuisance; that it was not contemplated that the public should pay anything by way of compensation or damages to the three corporations or any part of the expense of the improvement; that such improvement was a duty of such corporations and its expense a debt that they must pay. "The debt to be paid to the public is due from three, and the question arises as between them what each has to pay or bear." There is certainly no rule of common law, flexible or inflexible, by which this question can be decided. The only right of either of these tort feasors to contribution from the others, or to apportionment of damage, incident to the carrying out of the plan, must be derived from the language used by the legislature. New York New England R. R.Co.'s Appeal from Commissioners, 58 Conn., 532;Woodruff v. Catlin, supra. The plaintiff, however, claims to be substantially supported in this contention by the language used by this court inWoodruff v. New York New England R. R.Co., supra, p. 93, where, in referring to the expense to which the company alleged it would be subjected in carrying out the order of the commission concerning the removal of surface tracks, it was said — "That is an argument to be addressed to the commission. So far as we have been able to examine, we find no reason why the commission might not take any special damage to the defendant, or to the city of Hartford, or to the New York, New Haven Hartford Railroad Company, into account, as part of the entire expense, and determine what proportion each should bear, subject only to the limitations fixed in the resolutions." It is unnecessary to determine what we might consider "special damage," or whether, upon further examination than we felt called upon to make in the former case, or as seems called for in this, we might or might not find reason why the commission might not take any item of the plaintiff's bill for such alleged damage into its consideration and apportionment as a part of the entire expense, for it is evident that the language used by this court carries with it no intimation of an opinion concerning the duty of the commission in the matter. It is rather declaratory in another way of what had been previously *Page 100 
stated in the opinion, and in a quotation there made from the earlier opinion in Woodruff v. Catlin, supra, that the power and discretion of the commission in the premises was as unlimited as that of the legislature itself. Assuming then, as we may, that the commission possessed the power to consider each and every item of the plaintiff's claim, the question of how far it was reasonable to go in the exercise of that power is one which the legislature intended, and wisely, to leave to the sound judgment and discretion of its chosen instrumentality and arm, whose orders it was directed should be "obligatory upon all parties," and from which no appeal was allowed, and of which no revision was contemplated. Indeed, what items of claimed damage are "special," so as to be considered in any legitimate sense as entering into the "expense of an improvement," and what are not so, can rarely, if ever, in any case be a pure, unmixed question of law, but must generally be much more largely dependent upon particular conditions or facts. Thus, for illustration, one of the items of the plaintiff's bill reads thus — "Land of the company taken for retaining wall," the conceded facts in reference to such item being that no land was taken in any other way than that such as was previously occupied for railroad purposes in connection with surface tracks was now used for the foundation of the viaduct which carried the elevated and substituted tracks of the plaintiff's railroad. It would seem manifest that the authority best fitted for the determination of such questions arising in relation to a given work, other things being equal, would be the one which knew and whose duty it was to know the most about them, and equally manifest that in this instance such authority is not the Superior Court, whose interposition is invoked. And when it is the unquestioned and fully conceded power of the commission to determine in what proportion each party shall pay and bear the expense of the change and improvement, it would seem to be within a reasonable exercise of that power, according to its true intent and spirit, that, treating them as a proper matter of expense, these items (not of actual outlay, or not so in the direct execution of the work, but of incidental *Page 101 
loss — matters from their very nature incapable of precise, definite computation and ascertainment) should by the commission be apportioned between the parties by mutual offset, each bearing its own incidental loss as a due apportionment and adjustment of the entire burden; a way which, for aught we know, may be pre-eminently fair and equitable.
But finally, as we have seen, it is contended that if the commission possessed such discretion they failed to exercise it, the recorded action showing, as is claimed, that it disallowed the plaintiff's claims because of the want, as it judged, of jurisdiction or power to entertain them. We do not so construe the language used, which was that these claims "be disallowed, on the ground that the damages, if any, are not special to the New York New England Railroad Company, to be taken account of as a part of the entire expense of the improvement, but such as are incidental to the carrying out of the design and instructions of the legislative acts creating and regulating this board." Now this language, while plainly showing the ground on which the claims were disallowed, that is to say, the rule which the commission adopted for its guidance in the allowance and disallowance of claims, does not in any wise indicate why such rule was adopted, whether because, as the plaintiff claims, the commission held such view as to the limits of its jurisdiction, or because it considered such a rule most fair and just to all parties. In the absence of such indication the latter reason is to be presumed. Such presumption has close analogy to one which this court declared to exist in State v. Afford,31 Conn., 40, 46. In view of the language used by this court in Woodruff v. New York New England R. R. Co., supra, on which the plaintiff so much relied, the commission could hardly have doubted its power in this regard, while from that used by our lamented associate, Judge SEYMOUR, in the opinion of the court in New York New England R. R. Co. v. Cityof Waterbury, 60 Conn., 9, it could hardly have questioned our views in reference to such elements of damage. In that case, after citing from the former *Page 102 
decision of this court in City of Bridgeport v. NewYork New Haven R. R. Co., 36 Conn., 269, in which, referring to items of damage similar to at least some of those claimed by the plaintiff, it was said that "all such claims for damages, and all claims that were not direct and immediate burdens, have been uniformly holden too contingent and remote to be the basis of assessment for damages"; and after disposing of a claim, in substance repeated by the plaintiff in this case, that the rule must be the same as when land of a manufacturing company was taken for a highway, and that, the law being so in such cases that if the factory building must be raised or lowered, shored up, or moved in consequence, the company must be paid enough to make good the expense so necessitated, therefore the same rule must be adopted in favor of the railroad company, and saying, "but the cases stand upon a very different footing, in one the damage is the direct, natural, unavoidable result of the taking; in the other the damage is in no way, directly or indirectly, naturally connected with the taking, but artificially and by means of a statute which has respect to the safety of the public, and not to the damage of the party whose property is taken or to the benefit of the party who takes it," the opinion of Judge SEYMOUR uses this most emphatic language: "We cannot hold that a duty which the state has most justly imposed upon the applicant, as its share towards the protection of life, should be turned into an element of damage, for which compensation must be made when circumstances arise which create the duty." These expressions, used in a case in which the present plaintiff was a party, and in reference to an actual expenditure or outlay by the company, will apply with added weight to a claim for reimbursement for damage purely incident to the fact that the use of its land for a grade crossing, a "public nuisance, dangerous to human life," was more profitable to the plaintiff in the exercise of its franchise from the state in the way which suited it best, than its use for a safe because elevated crossing, with the consequent protection of life thereat, would be.
But it is urged by the plaintiff that if the acts relative to *Page 103 
the Asylum Street Bridge Commission admit of such construction as to warrant the action taken by the commission, they are unconstitutional. No argument in support of such contention has however, been advanced, or could be as it seems to us, not already addressed to, met and answered by this court in previous and recent decisions concerning these acts and other legislation relating to grade crossings. Woodruff v. Catlin, supra; Woodruff v. NewYork New England R. R. Co., supra; New York NewEngland R. R. Co. v. City of Waterbury, supra; NewYork New England R. R. Co.'s Appeal,supra; Town of Westbrook's Appeal, 57 Conn., 95. Respect for these, our own former decisions, prevents our further consideration of this claim.
The line of reasoning which we have adopted, and the conclusion to which we have thereby been brought, also make it unnecessary to examine other grounds upon which the same result might perhaps have been reached.
 There is no error in the judgment appealed from.
In this opinion ANDREWS, C. J., TORRANCE and F. B HALL, Js., concurred. CARPENTER, J., dissented.