JOHN ENGLISH, TREASURER OF THE CITY OF NEW HAVEN, *vs.* THE NEW HAVEN AND NORTHAMPTON COMPANY.

The defendants were an incorporated company, with a charter open to amendment or repeal, and which empowered them to construct and use a railroad terminating in the city of New Haven, and provided that the construction and use of that part of the road within the limits of the city should be subject to such regu-

lations as the common council of the city should prescribe. After the defendants had constructed their road and built bridges over the same within the city to the acceptance of the city, an act was passed empowering the common council to order them widened in such manner as public convenience might require and to enforce the order. Held that the act was not unconstitutional as impairing the obligation of the contract of the state with the defendants, or as taking their property without compensation.

Whatever might have been the case if the charter had been a close one, yet under the power to amend it the General Assembly had the right to impose upon the defendants any additional condition or burthen connected with the grant which they might deem necessary for the welfare of the public and which they might justly have imposed originally.

The entire duty of erecting and maintaining the bridges having been imposed by the charter and by the act in question upon the defendants, the common council, in determining when and in what manner the bridges should be altered, would not be an interested tribunal, even if regarded as acting as the agents of the city.

But the common council were acting as the agents of the law and not of the city.

TRESPASS on the case, brought upon a section of the charter of the city of New Haven, to recover the expense of widening a bridge within the city over the railroad of the defendants.

The New Haven and Northampton Company was incorporated as a canal company in the year 1836, and in 1846 were authorized to construct a railroad along the line of the canal, and in the place of the latter which was abandoned. The railroad was soon after made, and has ever since been used by the company. The act of 1846, by which they were authorized to construct their railroad, contained the following provision : "Provided that said company shall construct and use that part of said road within the limits of the city of New Haven, in such manner and subject to such rules and regulations as the common council of said city shall prescribe." The original charter contained a provision that the General Assembly might amend or repeal it at pleasure.

That part of the railroad within the limits of the city was located in the bed of the old canal. The canal intersected Temple street between Grove and Trumbull streets. The canal bridge over the intersection was removed, and a new, wider, and more substantial bridge with stone abutments was built by the company. The road at this place as well as at all others within the limits of the city was constructed, and

this bridge was built, under the supervision and to the acceptance of the city. The bridge thus built was thirty-six and a half feet wide, but was seventeen and a half feet less than the full width of the street.

At the May session of the General Assembly in the year 1857, an act was passed, entitled, "An Act relative to the charter of the city of New Haven," the thirty-eighth section of which is as follows: "Said court of common council shall have supervision over all bridges crossing railroads in said city, and may from time to time order the widening or repairing of said bridges in such manner and within such times as in their judgment public convenience may require; and in case any railroad company whose road such bridge crosses shall neglect to obey such order, said common council may cause the required widening or repairing to be executed at the expense of said city, and the treasurer of said city may then collect the amount of such expense in an action of trespass on the case in his own name against such delinquent company."

The common council of the city, on the 5th of December, 1859, passed the following order:—

"Whereas, in the judgment of this court, public convenience requires the widening of the bridge crossing the railroad in Temple street in the manner and within the time hereinafter prescribed: therefore, ordered, that the railroad company whose road said bridge crosses, widen said bridge before the fifteenth day of May, 1860, in the following manner: to widen the abutments of said bridge with the wood work of the same to the full width of Temple street at its intersection with Grove street."

Due notice of this order was given to the defendants, but they neglected to comply with the same, and on the 6th of August, 1860, a further like order was made, and notice thereof given to the defendants, requiring them to widen the bridge in the manner directed before the 25th day of August, 1860. The defendants having neglected to obey this order the officers of the city widened the bridge, and this suit was brought to recover the expense incurred by the city in so doing.

On these facts, which were found by the superior court, the case was reserved for the advice of this court.

*R. I. Ingersoll* and *C. J. Johnson*, for the plaintiff.

*Beach*, for the defendants.

BUTLER,* J.  The defendants raise upon this record, and the parties discuss in the briefs submitted to us, the question whether the General Assembly exceeded the constitutional limitations of their power when they passed the act of 1857, on which this action is founded.  The defendants insist that the provisions of that act, so far as they delegated authority to the court of common council of the city, at their discretion to direct the defendants to widen the bridge in Temple street, and enforce the direction by the proceedings in question, impair the obligations of their contract with the government of the state, and take their property without compensation. We are all satisfied that the claim of the defendants is not well founded.

First, because the act did not contemplate any thing which could impair any obligation of that contract, or deprive the defendants of the full enjoyment of any chartered privilege, or take their *property* for public use, within the meaning of either constitutional limitation.

The grant to the defendants contains an express reservation of the right to alter, amend or repeal it at the pleasure of the General Assembly, and whatever might be true if the charter was a close one, the General Assembly could impose upon the defendants any additional condition or burthen connected with the grant, which they might deem necessary for the protection or welfare of the public, and which they might originally and with justice have imposed.  The excavation through Temple street was made by the corporation to whose rights and obligations the defendants have succeeded, by authority of their

* This case being submitted on briefs, was considered by Judge Butler, although he was not present at the term.

charter, and it was eminently just and proper, and in accordance with the policy of our legislation, to require that company, or the defendants, to bridge the excavation to any extent which public convenience and necessity might then or at any time require, and as an original or supplemental provision of the charter. It has been made a question in another state whether, the legislative power can impose a new *public* burthen on a *private* corporation, without violating the fundamental principles of the social compact, where the burthen is in no way connected with the grant as a consideration for it, or a condition annexed to it for the protection of individual or public rights which would otherwise be injuriously affected by the exercise of the franchise conferred. But that question, if it be a question, has not been raised, and could not be successfully made in this case, for the burthen here imposed is clearly connected with the grant, and necessary to protect the public from injurious consequences resulting from an exercise of the power conferred by the charter.

And in the second place, because, if it were conceded that the duty of widening the bridge rested upon the city under the general provisions of law relative to highways, at the time the action in question was passed, the court of common council would not be an *interested*-tribunal. The construction and maintenance of highways, and bridges which form a part of them, is a public burthen, in which no corporation can have any vested right, and which the General Assembly apportions and imposes according to its sense of justice upon the territorial subdivisions and corporations of the state. If the city were bound under such apportionment to widen the bridge in question, and the General Assembly saw fit to transfer the duty from the city to the defendants, and delegate to the common council authority to direct when the duty should be performed and to enforce its performance, the common council in the exercise of that authority would be disinterested. The *transfer* of duty from the city to the defendants would be the immediate act of the legislature alone, and in merely determining *when* the duty should be performed, and in enforcing perform-

ance, that board of officers would not act as agents of the city, but as the agents of the law.

But thirdly, the obligation to widen this bridge, whenever public convenience and necessity required it, did not rest upon the city, but was in fact imposed as a condition of their charter upon the defendants. The several acts which constitute that charter contain express provisions which require the corporations created by it to bridge the excavations they might make through the streets of the city. Reading these provisions in the light of surrounding circumstances, and in view of the policy of the legislature to charge such corporations with the duty of restoring highways, when disturbed, to their former state of usefulness, we think it entirely clear that they intended to provide that the highway in question should be so restored whenever and to whatever extent the growth of the city and the wants of the public might require, and as a continuing duty. That being so, there is nothing in the act of 1857 which affects the defendants and is material to this case, except a delegation of authority to a disinterested and proper tribunal to determine when such further restoration had become necessary, and direct it to be done at the expense of the defendants; and of that the defendants can not legally or justly complain.

The superior court must be advised to render judgment for the plaintiff.

In this opinion the other judges concurred.