60   1
61  527
60   1
62  538
60   1
63  101
60   1
65  434
60   1
75  452
75  454

### THE NEW YORK & NEW ENGLAND RAILROAD COMPANY vs. THE CITY OF WATERBURY.

Hartford Dist., Oct. T., 1890. ANDREWS, C. J., CARPENTER, LOOMIS, SEYMOUR and TORRANCE, JS.

It is provided by Gen. Statutes, § 3481, that whenever a new highway is laid out across a railroad, it shall pass over or under the railroad track as the railroad commissioners shall direct; and that the railroad company shall construct the crossing, bearing half the expense of it, and being reimbursed for the other half by the town, city or borough. A new street was laid out in a city across a railroad, the land occupied by which was owned in fee by the railroad company, and the crossing was constructed by the company. Held that the railroad company was not entitled, in addition to reimbursement for half the cost of the crossing, to payment by the city of the remaining half of the cost as damage to which it had been subjected by the taking of its land for the highway.

The railroad company was incorporated under a charter which did not impose the burden of making such crossings, but its charter was subject to amendment. Held that the statute above mentioned constituted such an amendment.

All general laws and police regulations affecting such corporations are binding on them without their assent.

It is not a taking of its property to compel a railroad company to pay half the cost of building a bridge to protect the public, nor damage incident to the taking of property within the true meaning of the term.

[Argued October 15th, 1890—decided January 5th, 1891.]

APPLICATION for a re-assessment of damages for land

taken for a highway by the defendant city; brought to the Superior Court in New Haven County, and heard before *Fenn, J.*

The court made a finding of the facts, which, after stating that the highway in question was laid out by the city of Waterbury across the land owned in fee and occupied by the railroad company, and that the board of compensation of the city had assessed the damages for the land taken at $198, proceeded as follows :—The highway constructed upon the land so taken crosses the lay-out of the applicants, and by direction of the railroad commissioners is made to pass under the railroad. The applicants constructed the crossing to the approval of the commissioners, the expense of such crossing being $7,755.19. One half of said sum has been paid to said company by said city, but the company also has demanded the other half, and claims to be entitled thereto, being $3,777.59. And I find that if said one half of said cost of conveying said railroad over said highway, which has not been paid to said company by said city, is to be taken into account and allowed in estimating the damage to which said company is entitled, said damages are $4,027.59. Otherwise I find said damages to be $250.

Upon these facts the case was reserved for the advice of this court.

*E. D. Robbins*, for the plaintiff.

1. The law of eminent domain requires that the compensation awarded shall cover not merely the value of the land taken, regarded by itself, but all direct damage and loss to its owner resulting from the taking. If a highway divides a farm, the owner receives as compensation the damage to the whole farm. If a factory must be raised or lowered, shored up or moved, in consequence of the taking for a highway of part of the land of a manufacturing corporation, such corporation must be paid enough to make good the expense so necessitated. Lewis on Eminent Domain, §§ 461, 462. In the case at bar the highway has been constructed, pursuant to the charter of the city of Waterbury, pending the

appeal from the award of compensation. The plaintiff has actually built piers and a bridge to carry its railroad over that part of the highway located on the land now under condemnation. The final net cost to it of making these absolutely required re-arrangements has been exactly $3,777.59. This element of damage is neither remote nor difficult of ascertainment, but as direct, immediate and definite as could possibly be conceived. It never was conjectural or contingent, but from the first stage of the proceedings was absolutely certain and capable of exact estimation. It is not pretended that there is a counterbalancing advantage of any nature. A highway under the railroad is and will always remain merely a source of danger and of possible expense. If the claim made below by counsel for the city of Waterbury is sustained, the taking of the plaintiff's land for a public use will have caused it a direct net loss of $3,777.59, for which it receives no compensation. The authorities amply sustain our claim. *Com.* v. *Boston & Maine R. R. Co.,* 3 Cush., 25; *Mass. Central R. R. Co.* v. *Boston, Clinton & Fitchburg R. R. Co.,* 121 Mass., 124; *Matter of Lockport &c. R. R. Co.,* 19 Hun, 38; *Chicago & Grand Trunk R. R. Co.* v. *Hough,* 61 Mich., 507; *Toledo & Ann Arbor R. R. Co.* v. *Detroit, Lansing & Northern R. R. Co.,* 62 id., 564; *Illinois Central R. R. Co.* v. *City of Bloomington,* 76 Ill., 447; *St. Louis, Jacksonville & Chicago R. R. Co.* v. *Springfield & N. Western R. R. Co.,* 96 id., 274; *Lake Shore & Mich. South. R. R. Co.* v. *Chicago & W. Indiana R. R. Co.,* 100 id., 21; *Chicago & W. Indiana R. R. Co.* v. *Englewood Connecting R. R. Co.,* 115 id., 375. In *Old Colony R. R. Co.* v. *Plymouth,* 14 Gray, 155, SHAW, C. J., says—"The petitioners are entitled to recover damages for taking their land for the purposes of a highway, subject however to its use for a railroad; for the expense of erecting and maintaining signs required by law at the crossing; for making and maintaining cattle-guards at the crossing if necessary; and for the expense of flooring the crossing and keeping the planks in repair." In *Flint & Pere Marquette R. R. Co.* v. *Detroit & Bay City R. R. Co.,* 64 Mich., 350, the court held that the

cost of maintaining signals on a crossing system would be elements of damage, though the cost of stopping trains at such a crossing is not. In *Grand Rapids* v. *Grand Rapids & Indiana R. R. Co.*, 58 Mich., 641, the court say :—" The damage done to a railroad by having a highway run across it must necessarily include all the additional expenses entailed by such a crossing, which in a city may involve a considerable outlay in making the crossing safe and providing guards against accident. Under the constitution there must be just compensation, and this cannot be denied by law or by verdict." The appellant is a corporation, and its charter is subject to amendment, but this fact does not in any wise affect its constitutional right to compensation when its property is taken for public use. In *Toledo & Ann Arbor R. R. Co.* v. *Detroit &c. R. R. Co.*, before cited, the court quotes with approval the following language from another case cited :—" Neither the state nor any of its departments or municipalities have or claim any interest in the property or franchises of the company. They neither pay nor contribute towards the purchase of the right of way or keeping it in proper repair afterwards. All this is done by the company itself and through its efforts, and the right thus acquired and paid for by the company is as much its property and of value to it as would be a like right or interest if owned by an individual. In justice, therefore, the corporation should have as clear a right to compensation for injury sustained in consequence of an appropriation or use of its property by another without its consent, as an individual would." There can be no question that the present case comes entirely within the law of these cases. If signboards, planks between rails, and cattle-guards, when required by law at crossings, are proper elements of damage, so clearly in this case are the piers and bridge, which also are absolutely necessary.

2. The charter of the city of Waterbury requires it to pay all damages which shall be done to any person by the taking of his land for a highway. 7 Private Laws, 220. It is sophistry to argue that this requirement has been com

plied with, if, by the laying out of the highway, the land-owner suffers a damage of $3,777.59, which was a certain, direct and immediate consequence of that lay-out, because necessitated by statute, and which, in the hearing for the assessment of damages, is capable of easy and exact ascertainment.

3. The constitution of the state provides that the property of no person shall be taken for public use without just compensation therefor. Art. 1, sec. 11. There is no controversy here about the police powers of the state. In some instances where laws have been thought necessary for the public health, safety or morals, which incidentally injured individuals, the claim has been made that the laws were void as violating this constitutional provision. The courts have, however, found that there was no "taking" of property in such cases. In the present instance there is no question whether there is a "taking of property;" the proceeding is avowedly one for that specific purpose. The only question is one which, in the cases above referred to, was never even reached, namely, what is just compensation? It is mockery to call that compensation just which evidently and unavoidably leaves a landowner, as soon as the land is taken, $3,777.59 worse off than he would be if his land were not condemned for the public use.

4. The 14th amendment to the constitution of the United States provides that no person shall be deprived of property without due process of law, nor denied the equal protection of the laws. The plaintiff certainly is denied the equal protection of the laws when every other individual or corporation whose land is taken for this highway receives, not merely the value of the ground condemned but full compensatory damages for the taking, while the plaintiff receives merely the amount of money which its land would be worth if it were an unoccupied field.

5. The suggestion that section 3481 of the General Statutes forbids the award of compensatory damages is untenable for two reasons. 1st. That statute has no reference to the assessment of damages in condemnation proceedings nor

·even to the laying out of the highways. It merely provides that independently of any such proceedings, whether land owned by the railroad company be taken or not, the municipality "constructing" a new highway shall pay half the ·expense of constructing the railroad crossing. — 2d. Any construction of a statute will always be avoided, if possible, ·which brings it into variance with the constitution of the ·state or of the United States. *Camp* v. *Rogers*, 44 Conn., ·291, 299.

*G. E. Terry*, for the defendant.

SEYMOUR, J. The legislature in the year 1883 passed an act "concerning the crossing of railroads by highways." It provided, in one of its sections, that "whenever a new ·highway or a new portion of a highway should thereafter be constructed across a railroad, such highway or portion of highway shall pass over or under the railroad, as the railroad commissioners shall direct. The company or trustee operating such railroad shall construct such crossing to the approval of the railroad commissioners, and may take land, for the purposes of this section, in the manner now provided by law for the taking of land by railroad companies. One half the expense of such crossing shall be borne by the company or trustee constructing the same, and the other half thereof shall be paid to said company or trustee by the town, city or borough which constructs said highway or portion of highway." Gen. Statutes, § 3481.

After the passage of this act the board of road commissioners of the city of Waterbury, upon due notice to, and after hearing, all owners of land proposed to be taken thereby, laid out a highway in said city, called Fifth street; which lay-out crosses the track of the applicant and includes and takes therefor land in which it has the estate in fee. By direction of the railroad commissioners the highway was made to pass under the railroad. The railroad company constructed the crossing to the approval of said commissioners, at an expense of $7,755.19. One half of this sum has

been paid by the city, but the railroad company has demanded the other half and claims to be entitled thereto.

On July 11th, 1887, the board of compensation of Waterbury assessed and determined that the city pay to the railroad company, in full of all damages over and above all benefits accruing to the applicant from the said lay-out and extension of Fifth street, the sum of $198, and made its report accordingly to the court of common council of the city. The report was accepted and duly recorded and said assessment of benefits and damages was confirmed and adopted by the court of common council and approved by the mayor of the city. Thereupon the railroad company brought its application in due form for a reassessment of damages.

The Superior Court finds that if said one half of the cost of conveying the railroad over the highway, which has not been paid to the railroad company by the city, is to be taken into account and allowed, in estimating the damage to which the company is entitled, the damages are $4,027.59; otherwise the damages are $250. The question what judgment shall be rendered upon the facts of the case is reserved for the advice of this court.

The contention of the railroad company is that it is entitled to claim and receive, as part of its damages for the taking of its land for the highway, compensation for the entire expense which it was compelled to incur in constructing the crossing as directed by the railroad commissioners. It insists that the statute dividing the expense is not applicable to this case, and that to apply it and enforce it would be in violation of the provision of our constitution that the property of no person shall be taken for public use without just compensation therefor.

The statute was passed, as is well known, as part of a general plan to diminish the number of grade-crossings. Of course the legislature did not contemplate, when it provided that one half the expense of constructing crossings under its provisions should be borne by the railroad company, that it, in turn, could recover such half from the town, city or borough constructing the highway, under a claim for dam-

ages consequent upon the exercise of the right of eminent domain in taking land of the railroad for highway purposes. The applicant nevertheless claims that the entire expense of constructing the crossing is damage incident to the taking of its land by the condemnation proceedings, to which it is entitled as just compensation. It argues that inasmuch as the law compels it to build the bridge and pay one half of the expense of so building, therefore Waterbury must pay such one half of the expense in addition to its own share, as just compensation for taking the land.

The charter of the New York & New England Railroad Company is not what is called a close charter, but is subject to legislative amendment. All general laws and mere matters of police regulation, affecting corporations, are binding without their assent. *New Haven & Derby R. R. Co.* v. *Chapman*, 38 Conn., 71. The act in question has the effect of an alteration of the charter of a company, previously incorporated by a charter which did not impose the duty, but which contained a provision that it might be altered at the pleasure of the legislature. *Bulkley* v. *N. York & N. Haven R. R. Co.*, 27 Conn., 479.

It was held in *English* v. *N. Haven & Northampton Co.*, 32 Conn., 240, that, under the power to amend a charter, the General Assembly had a right to impose upon the defendant any additional condition or burthen, connected with the grant, which they might justly have imposed originally. In that case the defendant's charter empowered it to construct and use a railroad terminating in the city of New Haven, and provided that the construction and use of that part of the road within the limits of the city should be subject to such regulations as the common council should prescribe. After the defendant had constructed its road and built bridges over the same within the city and to its acceptance, the legislature passed an act authorizing the common council to order the bridges widened in such manner as public convenience might require, and to enforce the order. It was contended by the defendant that the act was unconstitutional as impairing the obligation of the contract of the

state, and as taking its property without compensation therefor. But the court held the contrary and sustained the statute.

This court said, in *City of Bridgeport* v. *N. York & N. Haven R. R. Co.*, 36 Conn., 264—"There have been many decisions where new highways have been laid across railroads and the railroad company have claimed damages for increased liability to accidents at the crossings or for increased expense of ringing the bell or for liability to be ordered by the commissioners to build a bridge over the track or to keep gates or flagmen. All such claims for damages, and all claims that were not direct and immediate burdens, have been uniformly holden too contingent and remote to be the basis of an assessment for damages."

There can be no doubt of the right of the legislature to require railroad companies to bridge their crossings of existing highways at their own expense. The case of *English* v. *The New Haven & Northampton Co.*, *supra*, fully recognizes that right, and it is expressly held in *N. York & N. England R. R. Co.'s Appeal from Railroad Comrs.*, 58 Conn., 532. In the latter case this court says "that such crossings are public nuisances, dangerous to human life, and no man has a vested interest in the creation or continuance of such a nuisance. In the exercise of the power of protecting human life the legislature may at any time and without notice abate it or prevent its existence." The same right is strongly affirmed in *People ex rel. Kimball* v. *Boston & Albany R. R. Co.*, 70 N. York, 569.

The applicant argues that, the law being so that if a factory building must be raised or lowered, shored up or moved, in consequence of the taking of land of a manufacturing company for a highway, such company must be paid enough to make good the expense so necessitated, therefore the same rule must be adopted in respect to the construction of the bridge in this case, required by the law. But the cases stand upon a very different footing. In one the damage is the direct, natural, unavoidable result of the taking. In the other the damage is in no way directly or naturally con-

nected with the taking, but artificially, and by means of a statute which has respect to the safety of the public and not to the damage of the party whose property is taken or to the benefit of the party who takes it.

The question before us is an interesting one and not entirely free from difficulties. The statute requires the applicant to construct a bridge over the highway which is laid out across its track. Now, because it owned the land taken for the highway crossing in fee, and it was therefore taken under the exercise of the right of eminent domain, can the applicant demand, by way of just compensation, that the one half of the expense, which the law requires him to pay, shall be paid back to him by the respondent? We think not.

Compensation for expense arising through such statutory obligation is not a legal element of damage. There is no right to compensation for what the law says shall be done at the expense of the railroad company. It is not a taking of property to compel it to pay one half the expense of building a bridge to protect the public, nor damage incident to the taking of property within the true meaning of the words. We cannot hold that a duty which the state has most justly imposed upon the applicant, as its share towards the protection of life, should be turned into an element of damage, for which compensation must be made when circumstances arise which create the duty. We are well aware that there are decisions that, where highways cross a railroad, the expense of cattle-guards, signs and planking is an element of damage which must be paid for. Different states have decided differently upon this point. Mills on Eminent Domain, § 33. Perhaps it is impossible to discriminate between those cases where compensation has been awarded and the case at bar. But the precise question here involved is substantially novel, and, at the risk of antagonizing the rule, if it exists, of allowing compensation for the expense of erecting statutory safeguards, we must decide this case upon the principles we have stated.

The Superior Court is advised to assess damages in favor

of the applicant to the amount of $250, and to render judgment accordingly.

In this opinion the other judges concurred.