THE FAIR HAVEN AND WESTVILLE RAILROAD COMPANY
*vs.* THE CITY OF NEW HAVEN.

Third Judicial District, Bridgeport, October Term, 1902.
TORRANCE, C. J., BALDWIN, HAMERSLEY, HALL and PRENTICE, JS.

A Special Act of 1895 (12 Special Laws, 565) authorizing street paving
in New Haven, provided that a portion of the cost might be as-
sessed upon abutting landowners, and that street-railway companies
should be assessed and pay the cost of paving their tracks, for the
full distance and for a width of nine feet for each line of track.
In 1899, after West Chapel Street, the street in question, had been
paved, and while assessment proceedings were pending, another
Act (13 Special Laws, 181) was passed. This Act related to future
paving, except the third section, which prescribed that "an assess-
ment of benefits and damages" for the pavements already laid in cer-
tain specified streets, including West Chapel Street, should be made
under the provisions of that Act (1899), and " the property " as-
sessed in accordance therewith. *Held* that the Act of 1895, in so
far as it provided for the payment by street-railway companies of
their share of the cost, was not repealed by § 3 of the Act of 1899.
The repeal of an Act will not be implied without plain evidence of in-
tention, especially where it would work an injury to parties who
have acted in reliance upon rights acquired under the former stat-
ute.
It is within the constitutional power of the legislature to require a
street-railway company to reimburse a municipality for the cost of
laying a highway pavement upon such portion of the street as is
peculiarly appropriated to the special use of its tracks.
In the present case the width of each line of track was fixed at nine
feet. *Held* that there was no such apparent injustice in this as to
warrant an adjudication declaring the law unconstitutional.
The plaintiff's charter was expressly subject to amendment, alteration
or repeal, at the will of the General Assembly. *Held* that the Act
of 1895 was in effect an amendment.
Under this power of amendment the State has, at least, a right to au-
thorize legislation imposing reasonable regulations and require-
ments upon a street-railway corporation in respect to its use of
the streets, the precautions to be observed by it for the public
safety and welfare, the condition of repair in which the streets
should be kept, the improvement which should be made thereon
for the convenience of public travel, and the share of any burden
incident thereto which should be borne by such corporation.

One who has had notice of the inception of proceedings for a local public improvement, is bound to take notice of all subsequent steps, since all, from first to last, form, in legal contemplation, but one continuous proceeding.

Argued October 28th, 1902—decided January 20th, 1903.

APPLICATION for relief from the action of the court of common council of the city of New Haven in assessing the plaintiff $36,879 for asphalt paving in West Chapel Street in said city, brought to the Superior Court in New Haven County where a motion of the defendant to strike out portions of the complaint and its demurrer to the amended complaint were overruled (*Roraback, J.*), and the case subsequently tried to the court, *Shumway, J.;* facts found and judgment rendered reducing the assessment against the plaintiff to $5,823, and appeal by the defendant for alleged errors in the rulings of the court. *Error and cause remanded.*

A bill of exceptions was filed by the plaintiff, which was allowed and made part of the record.

The case is sufficiently stated in the opinion.

*E. P. Arvine* and *Leonard M. Daggett,* for the appellant (defendant).

*Talcott H. Russell* and *George D. Watrous,* with whom was *Harry G. Day,* for the appellee (plaintiff).

PRENTICE, J.    The plaintiff operates a double track electric street railway through West Chapel Street in the defendant city, and did so at the time of the improvement in question. In October, 1895, the court of common council ordered said street to be paved for a considerable distance with sheet asphalt.    The work of construction began in June and ended in October or November, 1897.    This pavement replaced crushed stone and Belgian block pavements, which had been laid in portions of the street in the years 1873 and 1874, and for which the plaintiff had been assessed.    The work was done under a contract between the city and the contractor at a certain price per square yard, and the city paid

therefor. This price covered maintenance for a specified period. The city thereupon assessed against the plaintiff the sum of $36,879 on account of said improvement and expenditure. This sum purported to represent the actual cost to the city of laying as much of the pavement as there was included in an eighteen foot strip the entire length of the paved section. The trial court rejected the rule employed by the city in arriving at the plaintiff's share of the burden of the improvement, which was one claimed by virtue of the provisions of Special Acts of 1895, p. 565, and adopted a rule radically different and much less favorable to the city, derived from Special Acts of 1899, p. 181, which imposed an assessment of only $5,823. This rule arrived at its result by treating each side of the plaintiff's tracks as frontage, and assessing it at the rate of sixty cents per lineal foot. The real question between the parties is as to the correctness of the defendant's claim as to the rule to be applied.

As the question involved is primarily one of statutory construction, we can best approach it by an examination of the statutory situation. When the work was ordered and constructed, Chap. 169 of the Public Acts of 1893 and the Special Act of 1895, p. 565, were both in force. The former Act provided (§ 6) that it should " be the duty of every street railway company to keep so much of the street or highway as is included within its tracks, and a space of two feet on the outer side of the outer rails thereof in repair, to the satisfaction of the authorities of the city, town, or borough which is bound by law to maintain such street or highway." The Act further provided that upon notice and failure to comply, the municipal authorities might do the work and recover the expense from the company. The latter Act authorized the defendant to issue its bonds to an amount not exceeding $500,000, the avails of which should be used in paving construction only, and provided that all pavements laid by authority of the Act should be laid upon the credit of the city and under its direction and control. It further provided that the city might assess a portion of the cost upon abutting landowners and another portion upon street-railway com-

panies. The latter provision was in the following language: " On all streets occupied by the track, or tracks, of any railway company, or companies, said company or companies shall be assessed and shall severally pay to the city the cost of paving and repaving the full length, and nine feet wide for each and every line of track of such railway or railways, now existing, or that may hereafter be laid in any street of said city." The Act then proceeded as follows: " All such assessments on the hereinbefore described abutting landowners and railway companies shall be payable at such time or times as may be determined by the court of common council."

After the pavement in question was laid, and pending proceedings to assess in the manner provided in the Act of 1895, another Act, found in Special Acts of 1899, p. 181, was passed and went into effect. The first section of this Act provided that the city of New Haven should lay a tax of one mill on the dollar for the paving of streets, and that the receipts therefrom and from all other assessments resulting from the construction of street pavements should be expended for the original construction of pavements. The second section provided that " benefits and damages " should be laid and assessed for or against all owners of property abutting upon or adjoining the streets in which the pavement was laid, which assessment of benefits should not exceed a certain amount per lineal foot of frontage, varying according to the character of the pavement, and being sixty cents per foot for asphalt. The fourth section provided that all the pavements should be laid upon the credit of the city and under its direction, and that the assessments should be collectible and payable, and liens laid to secure them, in the same manner and at the same time as the city taxes. The fifth section provided for a right of appeal from assessments; the sixth that the Act should be regarded as an amendment to the city charter, and that all inconsistent Acts should be repealed. The seventh that nothing in the Act should prevent the city from issuing bonds for street pavement in accordance with the Act of 1895, and the eighth that the Act should not affect the liability of street-railway companies under the general laws.

The third section was as follows: "An assessment of benefits and damages to be laid for the pavements already constructed and laid in the city of New Haven, upon . . . and West Chapel Streets, shall be laid in accordance with and under the provisions of this Act, and the property owners shall be assessed in accordance therewith, irrespective as to whether or not brick gutters have been laid on said streets."

One of the controlling questions in this case is as to the effect of the Act of 1899 upon the provisions of that of 1895. The plaintiff contends that the latter Act repealed the former: the defendant that it did not. This difference of view explains the situation disclosed by the case. The city bases its claim to the larger sum assessed by it upon the rule of recovery laid down in the Act of 1895; the railway company claims to limit its liability at least to the smaller sum assessed by the court upon the strength of the rule of assessment prescribed in the Act of 1899, as interpreted by the court and accepted by the company.

It will be noted that the Act of 1899 contains no negative words and no express repeal of the former Act. The only repeal expressed is one of inconsistent Acts and parts of Acts. Such a repeal would have arisen by implication. *Hartford* v. *Hartford Theological Seminary,* 66 Conn. 475; *Braman* v. *New London,* 74 id. 695. The rule of repeal by implication extends still further. Wherever a later statute is repugnant in its provisions to those of a prior one, there is a repeal to the extent of the repugnancy; and wherever a later statute is exclusive, that is, when it covers the whole subject to which it relates, the former is repealed. *Hartford* v. *Hartford Theological Seminary,* 66 Conn. 475; *United States* v. *Claflin,* 97 U. S. 546. Even where the two Acts are not in express terms repugnant, yet if the later one covers the whole subject of the former, and embraces new provisions plainly showing that it was intended as a substitute for the former, it will operate as a repeal of the former. *United States* v. *Tynen,* 11 Wall. 88.

By the side of these principles stand others which are of importance when repeals by implication are claimed. Such

repeals are not favored, and will not be extended beyond
the reason therefor, nor presumed where the old and the
new may stand together. *Windham County Savings Bank* v.
*Himes,* 55 Conn. 433; *Bissell* v. *Dickerson,* 64 id. 61; *Kallahan* v. *Osborne,* 37 id. 488; *Central Ry. & E. Co.'s Appeal,*
67 id. 197. If both the earlier and the later statute can be
reconciled, they must stand and have concurrent operation.
*Goodman* v. *Jewett,* 24 Conn. 588; *Kallahan* v. *Osborne,* 37
id. 488; *Tallcott* v. *Glastonbury,* 64 id. 575. The repugnancy
between the two statutes must be clear and manifest, to
warrant a court in holding that the later repeals the former.
*Hartford Bridge Co.* v. *East Hartford,* 16 Conn. 149; *Middletown* v. *New York, N. H. & H. R. Co.,* 62 id. 492. A
statute is not repealed by a later affirmative one containing
no repealing clause, unless there is irreconcilable conflict, or
the later statute is clearly intended as a substitute for the
earlier. *Red Rock* v. *Henry,* 106 U. S. 596; *Henderson's Tobacco,* 11 Wall. 652. Repeals by implication extend to only
so much of the prior statute as is within the reason of the
repeal. They are never extended further than the inconsistency compels. *New Haven and Fairfield Counties* v. *Milford,*
64 Conn. 568. A statute expressly repealing inconsistent
Acts will not be held to affect pending cases, unless the intention to do so is apparent. *Uwchlan Township Road,* 30 Pa. St.
156; *Hickory Tree Road,* 43 id. 139. It might be added,
apropos of the facts in this case, that a repeal will not be implied without plain evidence of intention, where the repeal
would tend to deprive parties of rights relying upon the faith
of which they have acted to their injury in case of repeal.

The Act of 1899 contains two entirely severable parts. All
its sections save the third deal exclusively with future paving construction. The third section alone attempts to deal
with that which has been completed. We have no need to
inquire whether the Act of 1899 took away from the city the
power to thereafter lay new pavements under a bond issue
and distribute the expense thereof as provided in the Act of
1895. The sole question before us is whether the Act of
1899 deprived the city of the right to collect from the railway

company a share of the expense of the completed work upon West Chapel Street in the manner provided by the Act of 1895. It is clear that there is nothing whatever in the first-named Act, outside of § 3, upon which a claim of repeal to this extent can be based. If there is any inconsistency or re-pugnancy between any of the provisions of the Act of 1899 and those of the Act of 1895, in so far as they relate to any work constructed, or if the first-named Act so exclusively deals with such work or its incidents as to make manifest an intention to substitute its provisions for those of the prior Act upon that subject-matter, this repugnancy or this exclu-sive treatment must be found within the provisions of said § 3. There is but one provision in this section, and that a simple one. It is that any assessment of benefits and dam-ages for the already constructed pavement on West Chapel Street (among others) should be laid, and the property own-ers assessed, under the provisions of the Act. That here is a repeal of certain of the authority contained in the Act of 1895, to distribute some of the expense of the West Chapel Street improvement, is manifest. In so far as this section reaches it creates an irreconcilable inconsistency between its provisions and those of the earlier Act. But how far does it reach? It reaches of course only to the constructed pave-ments enumerated, of which that in question is one. It reaches only to "assessments of benefits and damages." Do these terms as used include the charge which the city was by the Act of 1895 authorized to make against and collect of the railway company? Whether we look at the natural meaning of the language employed, or interpret it in the light of all the provisions of the Act, the conclusion arises that this sec-tion, in common with the balance of the Act, exclusive of its last section, professing as it does to treat exclusively of as-sessments of benefits and damages upon property, and in the second section defining the benefits and damages as those ac-cruing to owners of property abutting the street, makes no attempt to deal with the burden to be borne by the corpora-tions enjoying a public franchise in the street and operating a portion of their respective systems over its surface. It

treats of benefits from the improvement as incident to the ownership of adjoining land specially benefited. The charge to be made against the railway companies is regarded as having quite another foundation and character.

It is impossible to read the two Acts of 1895 and 1899 together, without coming to the conclusion that the purpose of § 3 was to alleviate the burden imposed by the earlier Act upon adjoining landowners for the improvements completed, and that there was no intention to change the burden imposed upon the railway companies therefor. The Act of 1895 was careful to distinguish between the burden to be imposed upon the railway companies, and that to be placed upon abutting landowners. The two classes of burdens were imposed by distinct provisions, and later described by apt distinguishing language. The Act of 1899, so far as its language goes, deals only with assessments of benefits and damages. Section 2, which prescribes the scope of the Act, not only confines its application to such assessments, but also qualifies the assessments as assessments to be made "for or against all owners of property, abutting upon or adjoining the streets." Nowhere in the Act are railway companies named: nowhere are apt words used to describe them or any share of the expense which they were to bear. It is strange, if with the Act of 1895 and its distinguishing provisions necessarily called to the attention of the legislature, it lost sight of the distinction between landowners abutting the street and railway companies occupying it, and the nature of the relations of each to the contemplated improvements, and concealed the companies' identity as responsible parties in the descriptive terms of "owners of property, abutting upon or adjoining the streets on which such pavements are constructed." We are bound to assume that the legislature used its language intelligently, and it is fair to assume that the use was in the ordinary and commonly accepted sense, and to conclude that when it spoke of assessments of benefits upon abutting property owners, it did not intend to embrace within the description parties who were not the owners of land near the improvement, and whose

property ownership was limited to the rails, ties, poles, wires, etc., which lie in or extend along or over the highway.

It is scarcely to be credited that the legislature had the intention of freeing the railway companies from all liability for the cost of the several paving improvements which had been completed under and upon the faith of the Act of 1895; and yet this was the result of the Act of 1899, if the plaintiff's construction of it is to be adopted, unless indeed its language be given a most liberal and strained construction.

The situation is, we think, susceptible of a simple explanation. The Act of 1899 is to be taken in its natural meaning. Its provisions relating to assessments were intended to deal only with assessments of benefits and damages in favor of or against owners of land whose land adjoins the street in which the pavement is laid, by reason of some benefit or damage received affecting its value. The railway companies were not meant to be and are not to be regarded as within their scope. No change in the burden already upon them for the completed work was intended to be affected.

It follows from these observations, that there is no such clear and manifest repugnance between the provisions of § 3, and those of the Act of 1895 authorizing the rule of assessment claimed by the defendant, as compels the latter to give way, and that the controlling fact of intention to repeal does not appear. The defendant was, therefore, right in its claim as to the rule which the General Assembly had directed should be applied to the situation.

The plaintiff further objects to the application of the rule of assessment against it provided for in the Act of 1895, upon the ground that the provisions of that Act authorizing the defendant to charge against the plaintiff and collect from it the cost of the prescribed portion of any new pavement, if in force, would be unconstitutional and void. This objection comes rather late in the history of legislation of this general character and is, we think, not well founded. Plaintiff's counsel discuss the question chiefly as one involving the assessment of benefits by reason of public improvements. We need not stop to inquire whether the objection in this

form is one which would be well taken, since it is quite evident, as we have already had occasion to observe, that the legislation in question did not regard the charge to be imposed upon the plaintiff as one of that character, and since constitutional justification for the legislative attempt to impose upon the plaintiff the burden of a definite portion of the cost of the highway improvement can be otherwise so easily found.

The establishment, maintenance and regulation of highways is within those powers of the State which are commonly designated as police powers. *New Orleans Gas Co.* v. *Louisiana Light Co.*, 115 U.S. 650 ; *Jones* v. *Brim*, 165 id. 180 ; *North Hudson County Ry. Co.* v. *Hoboken*, 41 N. J. L. 71 ; *Goddard, Petitioner*, 16 Pick. 504. In the exercise of this power of highway regulation the State may of itself and directly, or through its authorized municipal or other agencies, decide what repair or improvement public comfort or safety requires, and determine upon whom the burden thereof should reasonably fall. The power of the State in these matters, as in all others involving the exercise of the police powers, is of course not unrestricted. The regulations must be reasonable and the burdens must be reasonably cast. The action must not be arbitrary, oppressive, partial, or unequal. *Woodruff* v. *Catlin*, 54 Conn. 277, 295 ; *New York & N. E. R. Co.'s Appeal*, 58 id. 532 ; *Goddard, Petitioner*, 16 Pick. 504 ; *Greensburg* v. *Young*, 53 Pa. St. 280 ; *North Hudson County Ry. Co.* v. *Hoboken*, 41 N. J. L. 71 ; *Lawton* v. *Steele*, 152 U. S. 133. Within reasonable limits, however, the legislative department is the judge of what the circumstances demand. To this end it is vested with a large discretion, and no legislative utterance will be invalidated unless in a clear case. The constitutionality of such legislation will be presumed, and where no reasons are apparent for holding the decision arbitrary, oppresive, partial or unreasonable, the courts will refuse to interfere. *Munn* v. *Illinois*, 94 U. S. 113 ; *Lawton* v. *Steele*, 152 id. 133 ; *Powell* v. *Pennsylvania*, 127 id. 678.

In this case the legislation and the action under it called

for the not unusual proceeding of paving a city street with asphalt. It cast a portion of the attendant burden upon abutting property owners, and another portion upon the corporation which enjoyed the exclusive public franchise of operating a street railway in the street to be paved. The extent of the latter burden was limited to the actual cost of the pavement laid upon that portion of the street which was peculiarly appropriated to the special use of this corporation. Here is no such apparent injustice as to warrant us in saying that constitutional powers have been transgressed.

The constitutional power which upholds this legislation and the municipal action thereunder, is that which has been so frequently appealed to to justify legislative action similar in character, whereby the burden of constructing sidewalks, curbs and gutters has been cast upon abutting property-owners; *Greensburg* v. *Young*, 53 Pa. St. 280; *Paxson* v. *Sweet*, 13 N. J. L. 196; *Lowell* v. *Hadley*, 8 Metc. 180; *Bonsall* v. *Lebanon*, 19 Ohio, 418; *Lewis* v. *New Britain*, 52 Conn. 568; whereby property-owners have been required to keep the sidewalks in front of their premises clean and free from snow and ice; *Goddard, Petitioner*, 16 Pick. 504; *Kirby* v. *Boylston Market Ass'n*, 14 Gray, 249; *North Hudson County Ry. Co.* v. *Hoboken*, 41 N. J. L. 71; whereby street-railway companies have been compelled to keep their tracks watered. *City & Suburban Ry. Co.* v. *Savannah*, 77 Ga. 731.

That the Act required the plaintiff to pay a specific portion of the cost, or rather the cost of a specific portion of the work, and not an amount to be subsequently ascertained or assessed, is no objection to its legality. *New York & N. E. R. Co.'s Appeal*, 58 Conn. 532; *State's Attorney* v. *Branford*, 59 id. 402. Neither is the fact that the Act did not provide that the plaintiff should first have an opportunity to itself lay the eighteen-foot strip of pavement, but was required to pay to the city the cost of its construction by the latter. Such is frequently the case as to one at least of the parties, where the work is of such a nature that it can be best done as an entirety. *New York & N. E. R. Co.* v. *Waterbury*, 60 Conn. 1; *State's Attorney* v. *Branford*, 59 id. 402.

Again, the plaintiff is a *quasi*-public corporation, having a franchise from the State to operate a street railway in the street in question, among others. Aside from the powers impliedly reserved as incidents of the so-called police power, the State has expressly reserved to itself the power to amend, alter, or repeal the plaintiff's charter. This power of amendment is of course not an unlimited one. What its limits are it is perhaps impossible to precisely define; but it is clear that the power extends so far as to authorize legislation imposing reasonable regulations and requirements upon a corporation operating a railway in a public street, as to the manner in which the street may be used by it, the precautions to be observed by it for the public safety and welfare, the condition of repair in which the street shall be kept, the improvements which shall be made therein for the convenience of public travel, and the share of any burden incident thereto which shall be borne by the corporation. The recognized rule upon this subject is well stated in *Inland Fisheries* v. *Holyoke Water Power Co.*, 104 Mass. 446, 451, as follows: "It is sufficient now to say that it is established by adjudications which we cannot disregard, and the principles of which we fully approve, that it at least reserves to the legislature the authority to make any alteration or amendment in a charter granted subject to it, that will not defeat or substantially impair the object of the grant, or any rights which have vested under it, and that the legislature may deem necessary to secure either that object or other public or private rights." See *Holyoke* v. *Lyman*, 15 Wall. 500; *New York & N. E. R. Co.* v. *Bristol*, 151 U. S. 556.

In *Shields* v. *Ohio*, 95 U. S. 319, 324, the court has this to say concerning the limitations upon the exercise of this reserved power: "The power of alteration and amendment is not without limit. The alterations must be reasonable; they must be made in good faith, and be consistent with the scope and object of the act of incorporation. Sheer oppression and wrong cannot be inflicted under the guise of amendment or alteration. Beyond the sphere of the reserved powers, the vested rights of property of corporations, in such

cases, are surrounded by the same sanctions and are as inviolable as in other cases."

The court in *Consolidated Traction Co.* v. *Elizabeth*, 58 N. J. L. 619, 623, states the practical and legal situation very pertinently as follows: " A street railroad company uses as its roadbed public streets, provided and improved at public expense, and acquired and held for the benefit and advantage of the public at large. . . . The legislature, in authorizing a street railway company to make use of the public streets, intended that the grantee of such privileges should be subject to municipal regulation of a greater scope then would be allowable in the case of companies occupying and using their own roadbed. . . . These companies . . . hold their franchises subject to such municipal regulations as do not unreasonably or unnecessarily interfere with the exercise of the franchises conferred by the legislature."

These principles have their substantial approval in the case of *English* v. *New Haven & N. Co.*, 32 Conn. 240.

The Act of 1895 was in effect an amendment to the plaintiff's charter. *Bulkley* v. *New York & N. H. R. Co.*, 27 Conn. 479; *New York & N. E. R. Co.* v. *Waterbury*, 60 id. 1.

Plainly what was required of the plaintiff by the amendment was well within the rule stated and without its limitations.

Incidental objections to the assessment made by the city are urged by the plaintiff and discussed in the briefs of counsel, to wit: (1) that it was without due notice to the plaintiff, and (2) that it included items of expense not involved in the cost of paving the eighteen feet of width chargeable to the plaintiff.

The first is not well taken, since the plaintiff was duly notified of the inception of the assessment proceedings before the city officials, which proceedings from their beginning to to their conclusion, in legal contemplation, formed one continuous proceeding, and at a later stage became a party to them. *Gilbert* v. *New Haven*, 39 Conn. 467.

With respect to the second, it is sufficient to observe that while it is quite possibly true that the city may have included

improper items of charge, its claim is not tied to the precise amount of its figures, which it will become the duty of the court below to revise and correct as the facts may require when it comes to apply the proper rule for the determination of the plaintiff's liability.

There is error and the cause is remanded to be proceeded with according to law.

In this opinion the other judges concurred.