# SUPERIOR COURT OF BALTIMORE CITY.

Filed August 6, 1915.

MAYOR AND CITY COUNCIL OF BALTIMORE

VS.

UNITED RAILWAYS AND ELECTRIC COMPANY OF BALTIMORE.

*S. S. Field* for Mayor and City Council of Baltimore.

*Joseph C. France* and *Sylvan H. Lauchheimer* for United Railways and Electric Company.

SOPER, C. J.—

On March 28, 1859, by Ordinance No. 44, the Mayor and City Council of Baltimore authorized and empowered certain individuals, their associates and their assigns, to lay tracks on certain of the streets in Baltimore City, and to operate a city passenger railway thereon. It was provided (Section 7 of the Ordinance) that the association should cause a book to be opened for the purpose of receiving subscriptions to the capital stock of the railway from such persons as might wish to become stockholders therein, and that (Section 9) if the parties, their associates, successors or assigns, should thereafter become incorporated, the rights and privileges granted to them should extend to such a corporation upon the conditions prescribed by the ordinance. One of the prescribed conditions (Section 11) was that the proprietors of the railway should keep the streets covered by the track, and extending two feet on the outer limits of either side of said tracks, in thorough repair, at their own expense.

In 1862 the General Assembly of Maryland passed an Act (Chapter 71) incorporating the Baltimore City Passenger Railway Company, and endowing it with the usual corporate powers. The passage of the Ordinance of 1859 and the assignment by the associates to the incorporators of all the rights, powers and privileges therein granted were recited. Section 2 of the Act provided "that the corporation by this Act created be and the same is hereby vested with all the rights, powers and privileges given and granted by the ordinance before mentioned to be by the said corporation held, enforced and exercised in the manner and form and upon the terms and conditions, and subject to the restrictions and limitations therein contained, except where the provisions of said ordinance may be inconsistent with this Act or any part thereof;" and further, that upon the acceptance of the Act by the incorporators, the railway property, consisting of cars, horses and other property, should become vested in the corporation, and the value at which such property should be taken by the corporation was fixed (Section 5).

The Act (Section 9) was to take effect after its passage, and after the incorporators should declare their acceptance thereof in writing to be recorded among the Land Records of Baltimore City.

It was finally provided (section 12) "that the General Assembly hereby expressly reserves the power, at all

times, to repeal, alter or amend this charter."

In 1906 the General Assembly of Maryland passed an Act, Chapter 401, of which Section 8 authorized the Mayor and City Council of Baltimore to impose upon all street railway companies, occupying with their tracks parts of the streets of Baltimore, the obligation to pay for repaving such streets with improved pavement, so far as the same should be done between the rails of the tracks and for a space of two feet on either side thereof. In 1912 the Mayor and City Council, by Ordinance No. 153, imposed the obligation as authorized by the legislature.

The obligation of the railway imposed by its charter to keep in repair was thereby broadened to include the obligation to repave the railway area. The United Railways and Electric Company of Baltimore, successors to the Baltimore City Passenger Railway Company, contested the validity of the legislation, and the result of the litigation is reported in the case of United Railways and Electric Company vs. Mayor and City Council, 121 Md. 552. It was there decided that the original duty to repair did not include the duty to repave, and that the Act of 1906 was invalid by reason of the infirmity of its title, in which there was no intimation of an intention to amend the charter of the railway company. The opinion of the Court was expressly withheld as to whether or not it was in the power of the legislature to impose the duty upon the company of repaving the track area in addition to that of repairing previously imposed.

Subsequent to this decision, the legislature of Maryland passed the Act of 1914, Chapter 37, wherein, under a title sufficiently indicative of the contents, it was again provided that there should be imposed upon every corporation occupying with railroad or street railway track or tracks any portion of any public highway in Baltimore City that should hereafter be paved or repaved with improved pavement by any public commission, board or agency, the obligation to pay for the cost of such pavement within the space covered by any such railroad or railway track or tracks and for a distance of two feet of each outer rail of such track or tracks.

This suit is brought by the city to recover the cost of the improved pavement in the railway area on Baltimore street from Fremont avenue to Liberty street, amounting to $21,455.44. It is defended by the railway company on the ground that the Act of 1914 is invalid because it is in conflict with the Constitution of the United States. The contention is that the Ordinance of 1859 constitutes a contract wherein the obligation of the railway company as to paving is specifically confined to repairs, and that the Act of 1914, by the imposition of the heavy additional burden to repave, violates the provisions of Article 1, Section 10, of the Constitution of the United States in that it impairs the obligation of a contract, and also offends the provisions of the Fourteenth Amendment to the Constitution, in that it denies the defendant the equal protection of the laws, and takes its property without due process of law. The city admits the contract, but claims that the legislature has the power to modify the paving obligations of the company either under the taxing power, or the police power of the State, or the power expressly reserved to it by the Act of 1862 and by the Constitution of Maryland of 1851, then in force, to alter, amend or repeal the railway company's charter.

It will be sufficient to consider only the last-mentioned power. A federal question is involved, namely, the extent to which the State legislature may go under the reserved power without coming in conflict with the contract clause of the Federal Constitution. It is admitted that there are limits to the power of the legislature in this respect; but precisely what these limits are it is unnecessary to discuss in the decision of this case. The matter is concluded by the decision of the Supreme Court of the United States in the very similar case of Fair Haven R. Co. vs. New Haven, 203 U. S. 379. In that case the original charter provisions of the street railway company, as to the matter of paving, were as follows: Section 9 of the charter authorized the Common Council of the City of New Haven to establish such regulations in regard to the railway as might be required for paving in and along the streets, and the company was required to conform to the grades then existing or thereafter established; and it was provided that the company should "keep that portion of the streets and avenues over which their road or

way shall be laid down with a space of two feet on each side of the track or way in good and sufficient repair without expense to the city or town of New Haven or the owners of land adjoining said track or way." It was also provided that the Act might be altered, amended or repealed at the pleasure of the General Assembly. Subsequently, after the lapse of thirty-three years, the legislature of Connecticut imposed upon the railway company the cost of paving and repairing the track area. To quote from the decision of the Court (page 389) : "By its original charter (1862) plaintiff in error was required to keep the street between its tracks, with a space of two feet on each side of the tracks, in good and sufficient repair. In the amendment of the charter in 1864 this obligation was retained, and also in the public acts of 1893. In the Act of 1895 the duty of paving and repairing was imposed on all railway companies. We shall assume, for the purpose of our discussion, that the duty to repair did not include the duty to pave and repave, although much can be said and cases can be cited against the assumption. Does the change and increase in burden upon the plaintiff in error come within the limitations of the reserved power of the State? Has it no proper relation to the objects of the grant to the company or any of the public rights of the State? Can it be said to be exercised in mere oppression and wrong? All of these questions must be answered in the negative. The company was given the right to occupy the streets. It exercised this right first with a single track, and afterwards with a double track. Before granting this right, the State certainly could have, and reasonably could have, put upon the company the duty of paving as well as repairing. Such requirement would have been consistent with the object of 'the grant. It is yet consistent with the object of the grant. It is not imposed in sheer oppression and wrong, and the good faith of the State can not be questioned. It is imposed in the exercise of one of the public rights of the State, the establishment, maintenance and care of its highways. The extent of this right is illustrated by West Chicago Railroad Co. vs. Chicago, 201 U. S. 506, and cases cited."

This decision, if the cases are in fact parallel, as they appear to be, is conclusive of the case at bar. The defendant seeks to distinguish them upon several grounds which require examination. In the first place, it is urged that the charter of the Fair Haven Railroad Company authorized the Common Council of the City of New Haven to establish such regulations in regard to the railway as might be required for paving in and along the streets, and the company was required to conform to the grades then existing or thereafter established. It is contended that thereby the legislature expressly provided for the right to alter the paving obligation of the company.

But the authority given by the Legislature to the Common Council to establish paving regulations, was not exercised. It was the act of the Legislature which imposed the obligation to repave upon the corporation. Moreover, if the Legislature had intended to make an express reservation of power to modify the duty of the railway to repair the track area, it could and doubtless would have used language more specific and direct than that which is quoted. It is manifest that the regulations intended were such as might become necessary to enable the paving to be done by the city without interference by the railway company and to enforce on the part of the company conformity with the grades that might be established. It is noticeable that neither in the decision of the case by the Supreme Court of Errors of the State of Connecticut, 75 Conn. 442, nor in the decision of the Supreme Court of the United States is there any reference to an express reservation of power to modify the paving obligation of the company, but on the contrary the right of the Legislature to increase the burden of the railroad company is based upon the general power to amend the charter.

In the next place, the defendant seeks to distinguish the cases on the ground that there is a difference of opinion between the Supreme Court of Errors of Connecticut and the Court of Appeals of Maryland as to whether or not a special benefit to the railway company follows improved pavement in the streets. In the case between the same railroad company and the City of New Haven, 38 Conn. 422, the Supreme Court of Errors held that the roadbed

of a street railway is liable to assessments for local improvements, on the ground that the roadbed is specially benefited by the improvements; but, in Maryland, in the case of Baltimore vs. Scharf, 54 Md. 499, the Court of Appeals said, upon the same question: "There can be no doubt that the rails, roadbed and other property of that corporation (railway company) are subject to taxation for municipal purposes, but it does not follow that it must contribute specially to street improvements such as this (new paving with Belgian blocks in place of cobble stones). Their estate is such as would not be enhanced in value by the projected work. The only ground on which assessment on the owners of land on each side of the road for such improvements has ever been justified is on the theory that such property owners are especially benefited and the land itself enhanced in value by the improvements. The property of the City Passenger Railway Company does not fall within the description of lands embraced in this theory."

The Scharf case is reaffirmed in the case of the United Railways and Electric Company of Baltimore vs. The Mayor and City Council of Baltimore, in 121 Maryland, in so far as to hold that the obligation to repair does not include the obligation to repave.

But, assuming that it has been authoritatively and conclusively settled in this State that the roadbed of a street railway is not liable to assessment for local improvements, it does not follow that the State is incompetent to impose upon the railway the cost of repaving the roadbed under the reserved power to repeal, alter or amend the railway's charter. As a special assessment, the Act of 1914 in question may be invalid as an attempt to tax a benefit which does not, in fact, exist, but as an amendment of the charter of the corporation imposing upon it an additional burden or condition in the use of its franchise, it may be an entirely valid exercise of the reserved power in the manner contemplated by the parties at the time of the grant and acceptance of the charter. Indeed, in the case of Fair Haven Railroad Company vs. New Haven, supra, reported in 75 Conn. 442, the Connecticut Court expressly refused to decide the case with reference to the question of special benefits. In

discussing the railroad's claim of the unconstitutionality of the Connecticut Act imposing the additional paving burden, the Court said, (page 450): "Plaintiff's (railroad's) counsel discussed the question chiefly as one involving the assessment of benefits by reason of public improvements. We need not stop to inquire whether the objection in this form is one which would be well taken, since it is quite evident that the legislation in question did not regard the charge to be imposed upon the plaintiff as one of that character and since constitutional justification for the legislative attempt to impose upon the plaintiff the burden of a definite portion of the cost of the highway improvement can otherwise be so easily found."

"Aside from the powers impliedly reserved as incidents of the so-called police power the State has expressly reserved to itself the power to amend, alter or repeal the plaintiff's charter." (Page 453.)

"The Act of 1895 was in effect an amendment of the plaintiff's charter." (Page 454).

In the decision of the Supreme Court of the United States in the same case no mention whatever is made of the Connecticut ruling that a railway roadbed is benefited by improved pavement, and, therefore, subject to assessment. On the contrary, it clearly appears that the validity of the statute assailed is based upon the power to amend reserved in the charter. Speaking of the decision of the Connecticut Court, the Supreme Court said (203 U. S. 388): "We accept the decision of the Supreme Court of Errors that the statutes were intended as an exercise of the power of amendment reserved by the State," and the quotation from the opinion of the Supreme Court above set out clearly shows that the decision of the Court had no reference whatsoever to the benefit derived by the railroad company from the new pavement, but is exclusively based on the reserved power of the State to amend the charter.

Finally and principally, it is urged by the defendant that in the case of the Fair Haven Railroad Company the contract was contained in the charter of the corporation granted by the Legislature, wherein was the section providing for amendment; but that in the case at bar the contract is the Ordi-

nance of 1859, which, without reservation of the right to repeal or amend, gave the privilege to lay tracks and operate the railway in the streets to certain individuals upon the condition, amongst others, of keeping the track area in repair; that the charter of the railway company was subsequently given by the Legislature to other individuals who had already obtained an assignment of the franchises granted by the ordinance; that the Legislature could not confer these property rights upon the Baltimore City Passenger Railway Company because the city prior thereto had divested itself of these rights and conferred them upon individuals; that the Legislature, therefore, gave no property rights; but merely corporate rights; and that the effect of Section 2 of the Act of 1862, whereby the corporation is apparently vested with the rights and privileges given by the ordinance, was only that of a "legislative assignment," which rendered unnecessary the form of assignment or conveyance whereby property is ordinarily transferred, and that the city having reserved in the ordinance no power to amend it, a contract was formed which it is beyond the power of the Legislature to alter.

It seems to follow from this argument that the Mayor and City Council by ordinance was enabled to accomplish what the Legislature itself could not do by Act of Assembly. It is manifest from the provisions of the Ordinance (Sections 7 and 9) that the formation of a corporation to receive the franchises was then contemplated. The general law at that time did not provide for the incorporation of a railway company and a special Act of the Legislature was essential in order to secure a charter. Such a charter, even without a clause reserving the power to amend, alter or repeal, must of necessity have been granted subject to the constitutional provision whereby all charters were amendable. Was it possible for the founders of the road to evade this constitutional limitation upon the authority of the Legislature? Could it be done by securing first, the grant of franchises to individuals by a city ordinance without reservation therein of the power to modify or amend and by the subsequent assignment of the franchises to a corporation then contemplated and afterwards formed?

This is a conclusion which is not justified by the circumstances of this case. It may be conceded for the sake of argument that the City of Baltimore had the power to grant to certain individuals franchises to use the streets of Baltimore, and for that purpose to pass an ordinance which should have all of the characteristics of a contract binding upon both parties; and that the property having thus been granted and conveyed by the city, the power of the Legislature to grant the same franchise to another person or corporation has been lost. Does it follow, however, that the Legislature has also lost the power to control the corporation in the enjoyment of the franchises?

The Act of 1862 granted to the railway company the ordinary corporate powers possessed by all corporations. And, in addition, the corporation was empowered to exercise all the extraordinary rights, powers and privileges of a railway in the city streets granted by the ordinance to the original associates. None of these powers could exist in the corporation except by an affirmative grant and concession from the State. All of them together constituted the charter of the company. It might be that the State could not grant the railway franchises to the corporation without the consent of the grantees of the city; but it is equally true that even with the consent of the original grantees, the corporation could not possess or exercise the franchises without the consent of the sovereign power manifested in the Act of the Legislature. If the Legislature had the power thus to grant or withhold its consent, it could grant that consent upon condition. In fact, it was obliged by the provisions of the Constitution to make the grant conditional upon the power of the Legislature to amend it. The conclusion inevitably follows that the Legislature had the same power to modify the manner or conditions upon which the railway company should exercise its franchises as it had to modify the method in which it should follow out any other ordinary corporate purpose or object of the concern.

No important distinction exists between the case at bar and the case of the Fair Haven Railroad Company vs. New Haven, and the verdict will be entered for the Mayor and City Council of Baltimore for the amount claimed.